73 So.2d 351

**HALMAN v. BULLARD.**

**5 Div. 546.**

Supreme Court of Alabama.

June 17, 1954.

116

McKee & Maye, Opelika, for appellant.

Walker & Walker, Opelika, for appellee.

**LIVINGSTON, Chief Justice.**

Mrs. Clementine Rice, a widow, departed this life in Lee County, Alabama, on July 14, 1951. She was approximately 84 years of age, and was not survived by a husband, parent, children, grandchildren, brothers or sisters. The complainant, Harvey Halman, and respondent, J. F. Bullard, are nephews of said decedent.

On April 5, 1951, Mrs. Clementine Rice executed and delivered to the said J. F. Bullard a deed conveying to him certain real estate located in Lee County, Alabama. The deed was acknowledged before a notary public, Hon. William L. Dickinson, and whose notary certificate is dated July 14, 1951, which is the date of the grantor's death. The deed was filed for record on July 17, 1951, three days after the grantor's death, in the office of the Judge of Probate of Lee County, Alabama.

At the time of the execution of the deed in question, Mrs. Rice owned an undivided three-quarter interest in 60 acres of land described in the deed. Harvey Halman, the complainant in the court below, owned an undivided one-quarter interest in said land.

On July 23, 1951, Harvey Halman filed his bill of complaint, in equity, in the Circuit Court of Lee County, Alabama, against J. F. Bullard to have said deed set aside on the ground of the mental incapacity of the grantor and the exertion of undue influence upon the grantor by the grantee.

Demurrer to the bill of complaint as last amended was overruled.

All testimony was taken orally before the judge in open court as provided by Equity Rule 56, Code 1940, Tit. 7 Appendix.

This appeal is taken from the final decree of the trial court which denied the relief prayed for and dismissed complainant's suit.

The deed in question purports to have been signed by the grantor by mark.

In his answer to the bill of complaint, as amended, respondent not only alleged that he was a purchaser in good faith and for a valuable consideration, but set out that the consideration for the deed to him was his agreement to live with the grantor, Mrs. Rice, for the balance of her natural life and to care for her until she died.

On July 14, 1951, and for several years prior thereto, the said deceased grantor had been in very bad health and almost totally confined to her bed. Appellant's evidence is to the effect that the deceased was non compos mentis and mentally incapable of executing a valid deed during those years. Evidence directly to the contrary, however, was introduced by the appellee.

For approximately two and a half years prior to Mrs. Rice's death, complainant's sister, Mrs. Ella Ennis, had, without compensation, lived with and cared for said grantor. Complainant had frequently visited Mrs. Rice and his sister, and had substantially contributed to their support.

The evidence tends to show that the respondent, J. F. Bullard, did not visit the deceased grantor prior to 1951 during the aforesaid two and a half-year period. He had contributed nothing to Mrs. Rice's support or welfare.

During April 1951, however, respondent and his wife moved into the decedent's small home. The evidence indicates that Mr. and Mrs. Bullard and Mrs. Ennis did not care for each other in the least. The evidence clearly shows that Mrs. Ennis feared that the Bullards would gain title to the land in dispute. Because of the presence of the respondent and his wife, Mrs. Ennis left Mrs. Rice's home on April 8, 1951, and never returned before the latter's death. Appellee and his wife remained in the home with the decedent from April 8, 1951 until the decedent's death on July 14, 1951. During that period, Mrs. Rice was completely dependent upon the Bullards.

On July 14, 1951, at approximately 2:00 p. m., the execution, by mark, of the deed in question was effected. The evidence shows that Mrs. Rice became seriously ill that evening at approximately 7:00 p. m. She died at 9:00 p. m.

Three issues are presented on this appeal. First: Was the decedent, Mrs. Clementine Rice, mentally incapable of executing a valid deed on July 14, 1951? Secondly: Was undue influence exerted upon the grantor by the grantee or the latter's wife? And finally: Is the decree of the trial court contrary to the great weight of the evidence?

In our opinion, all three questions must be answered in the negative.

The evidence has been considered with great care. No good purpose can be served by setting it out in detail to any greater extent than has already been stated. Beasley v. Beasley, 248 Ala. 690, 29 So.2d 232. A detailed discussion would be useless; a statement of our conclusions must suffice.

■ I. Upon the question of mental capacity, the law presumes every one to be sane until the contrary is proved. It is unsoundness of mind and incapacity to understand the business transacted, as contradistinguished from mere weakness, which must be proved in order to avoid a conveyance. Harris v. Bowles, 208 Ala. 545, 94 So. 757. Similar language is stated in Frederic v. Wilkins, 182 Ala. 343, 62 So. 518, wherein it was said the law requires nothing more than that the grantor should have sufficient mental capacity to fairly understand the nature and consequences of the act in question.

■ Furthermore, the burden of proof is upon the party attacking a conveyance to show the alleged incapacity of the grantor at the very time of the transaction. Hall v. Britton, 216 Ala. 265, 113 So. 238. Should proof of insanity prior to that time be shown, such does not raise the presumption of insanity at a subsequent time, unless it is shown that the insanity is permanent in nature. Hall v. Britton, supra.

■ We have assiduously studied the evidence offered by the respective parties upon this question, and are persuaded that Mrs. Rice fully understood the nature and consequences of the deed in question when she made her mark through the aid of Dickinson. Having in mind the advantage possessed by the trial court in estimating the intelligence and credibility of the several witnesses and the value of their testimony, we cannot say that the application of the above-stated principles of law to the evidence required the trial court to find that Mrs. Rice was contractually non compos mentis when she executed the deed on July 14, 1951.

■ II. The relation between J. F. Bullard and Mrs. Rice was that of aunt and nephew. Nothing in this relationship of itself creates a confidential relation. Abrams v. Abrams, 225 Ala. 622, 144 So. 828. Also, the evidence does not show that either J. F. Bullard or his wife exercised dominance over the will of the grantor. It does not appear that any fraud, artifice, or imposition was practiced upon, or any unconscionable advantage taken of, Mrs.

Rice by the appellee or his wife to bring about the execution of the deed.

The witness Dickinson testified that just prior to the time Mrs. Rice executed the deed he heard Mrs. Bullard state the following to the grantor:

"Aunt Tine, the lawyer is here to sign the deed. You know you have been after us for months to get the lawyer out here and to deed this property over. He is here now and he is not going to come back. *If you want to sign it,* you sign it today. You know who he is and what he is doing out here and you are just being ornery." (Emphasis added.)

Approximately fifteen minutes prior to the time Mrs. Bullard stated the above, Mrs. Rice had acted very passive when Dickinson first spoke to her. After having stated that quoted above, Mrs. Bullard then said:

"Now here he is Aunt Tine and you talk to him and go on and sign the deed *if you are going to sign it.*" (Emphasis added.)

Mrs. Bullard then left the room. Dickinson, the lawyer, and Mrs. Rice thereafter conversed with no one else in the room. Dickinson testified that Mrs. Rice then assented to the terms of the deed, which reserved a life estate to the grantor, and passed the remainder of the grantor's interest in fee to J. F. Bullard, her nephew.

■ When considered with all of the testimony stated above, we are unable to say that the words of Mrs. Bullard constituted undue influence. In order for such a condition to arise, the influence must be such as to destroy free agency, and substitute the will of another for that of the person nominally acting. See Harris v. Bowles, supra. Mere suggestion and advice addressed to the understanding and judgment do not constitute undue influence. Likewise, solicitation does not amount to undue influence *unless the grantor be worn out with importunities so that his will gives* way. Harris v. Bowles, supra. Such was not the case according to the evidence in the record before us.

■ It is not mere influence that is charged. Instead, *undue* influence is charged, and must necessarily be proven to overthrow the transaction. Influence which is the result of sympathy and affection only is not the *undue* influence that is condemned by the law. Harris v. Bowles, supra; Frederick v. Hartley, 202 Ala. 43, 79 So. 381. To be *undue* influence, it must be such as to dominate the grantor's will and coerce it to serve the will of another in the act of conveying. Frederick v. Hartley, supra.

Bulger v. Ross, 98 Ala. 267, 12 So. 803, 804, clearly states the rule adhered to by this court, as follows:

"The undue influence which will overturn or defeat a testamentary disposition of property must be of such a character as to overpower the will of the testator, and substitute another's will in its place. It must amount to *controlling, mental restraint and coercion, destroying the free agency of the testator.* In fact, to constitute such undue influence, the will and wish of the testator must be subordinated and displaced by the superior, dominating will of another. Affection, or a desire to gratify another's wishes is not that sort of coercion which defeats attempted testamentary disposition. *All the better instincts and emotions are left in full play, and are harmless unless the will itself—the power of independent action—is overcome.* It ceases to be the will of the ostensible testator, only when it is shown to have been brought about by another's superior will." (Emphasis added.)

It may be that kindness and attention on the part of the appellee won the affection of Mrs. Rice, and that appellee anticipated a substantial reward therefor. Even so, however, such an influence is not undue, and its consequences are not obnoxious to the law.

Cox v. Parker, 212 Ala. 35, 101 So. 657, 661, is not applicable to the instant case.

120

There, the evidence tended to show that the grantor "was asleep, or in a stupor, and was aroused by the donee; that she was propped up in bed and, being too weak to sign her name, the scrivener placed a pencil in her hand, then guided the hand and pencil while she signed the deed; that she then lay down and dropped off to sleep. It does not appear the contents of the deed were stated to her; the proceeding was carried out on the assumption that she was already advised of its contents."

Such circumstances are entirely different from the evidence now before us. Furthermore, it should be noted that the opinion of Cox v. Parker, supra, was an affirmance of the decision of the trial court.

Courts of equity will be astute to discover the signs of fraud, imposition, and unfair dealing; they are eager to thwart such evil ends. However, in doing so, they must be extremely careful not to interfere with that right of free disposal which inheres in the ownership of property, and not to defeat the uncoerced wishes of its owner. Stroup v. Austin, 180 Ala. 240, 60 So. 879.

III. The mental condition of Mrs. Clementine Rice at the time of the execution of the deed and the alleged undue influence claimed to have been practiced upon her to procure said execution presented issues of fact. The witnesses testified orally before the court. The conclusions reached by the trial court, therefore, are like a verdict of the jury and will not be disturbed on appeal unless contrary to the great weight of the evidence. Ray v. Ray, 245 Ala. 591, 18 So.2d 273. Inasmuch as we are unwilling to say that the findings of the lower court are palpably wrong, we shall not disturb its decree. Beasley v. Beasley, 248 Ala. 690, 29 So.2d 232.

The judgment must be affirmed.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.