119 So.2d 909

James DONALD

v.

Thereasa DONALD et al.

I Div. 857.

Supreme Court of Alabama.

April 21, 1960.

Wilters & Brantley, Bay Minette, for appellees.

Jas. R. Owen, Bay Minette, for appellant.

STAKELY, Justice.

The original bill in this suit was filed by Lourilla Autry, a non compos mentis, by James Donald, as her next friend, against Thereasa Donald. The original bill contains statutory allegations of a bill to quiet title and also sought the cancellation of a deed dated October 2, 1957, from Lourilla Autry to Thereasa Donald on the ground of mental incapacity on the part of Lourilla Autry and on the ground of undue influence exercised by Thereasa Donald over Lourilla Autry. The bill asked the court to ascertain what, if any, interest the respondent had in and to the property described in the bill of complaint. The original bill of complaint also sought general relief.

After the suit was commenced, Lourilla Autry died and the case was revived in the name of her sole and only heir, James Donald. James Donald (appellant) amend-

ed the original bill of complaint by praying the court to cancel not only the deed from Lourilla Autry to Thereasa Donald but also a deed from Lourilla Autry to Gulie Cumbie.

The respondents Thereasa Donald and Gulie Cumbie filed an answer to the amended bill of complaint. In the answer while admitting that Lourilla Autry was old and in declining health, it was denied that she was mentally incompetent and denied that the deeds were the result of undue influence exercised over Lourilla Autry. It was admitted in their answer that Lourilla Autry was living with Thereasa Donald when the deeds were executed, but alleged that Thereasa Donald prepared her meals and spent much time and money in and about her care and welfare.

The testimony in the case was taken before a commissioner and was submitted for final decree on the bill of complaint as amended, the answers of the respondents to the bill of complaint as amended and the testimony taken before the commissioner. The court rendered a decree dismissing the complainants' (appellants') bill of complaint. This appeal followed.

Since the case was submitted on testimony taken before a commissioner agreed upon by the parties, the case does not come here with any presumption in favor of the finding of the lower court and the evidence must be weighed and considered de novo in this court. Skinner v. Ellis, 245 Ala. 397, 17 So.2d 416.

According to the testimony of James Donald (appellant), he was over eighty years of age and lived on the property involved in this suit all of his life, that he had four brothers and sisters, all of whom were dead, and that he was now the only heir of his father James Donald, who was in his lifetime the owner of the property involved in this suit. He also testified that his sister, Lourilla Autry, was something over 90 years of age, that she was not of sound mind and that she had been sick for many years. It was stipulated between the parties that James Donald, the father of James Donald, the appellant, and Lourilla Autry, was the owner of all the property described in the amended bill of complaint at the time of his death. The complainant then introduced a certified copy of a deed from Lourilla Autry to Thereasa Donald dated October 2, 1957. The complainant further introduced a certified copy of a deed from Lourilla Autry to Gulie Cumbie (appellee), dated March 7, 1958. The complainant then introduced interrogatories propounded to the respondent Thereasa Donald (appellee) and her answers thereto. Thereasa Donald in her answers to these interrogatories stated that she spent about $5 a week for the care and welfare of Lourilla Autry during her lifetime, that Lourilla Autry received $38 to $43 each month from the State Welfare Department and that she did not pay anything to Lourilla Autry for the execution of the deed from Lourilla Autry to her.

The complainant also introduced interrogatories propounded by him to Gulie Cumbie (appellee) and his answers thereto. In these answers Gulie Cumbie stated that he did not pay any consideration to Lourilla Autry for the execution of the deed from her to him. The complainant then introduced in evidence a deed from Thereasa Donald to Gulie Cumbie dated June 11, 1958. It appears to be undisputed that Gulie Cumbie paid Thereasa Donald $1,400 for the deed from Thereasa Donald to himself.

It will be seen from the foregoing that James Donald and Lourilla Autry each owned an undivided one-half interest in the 142 acres of land involved in this suit at the time the events involved in this suit took place. About eighteen witnesses testified as to the mental status of Lourilla Autry. It is undisputed that she was about ninety years of age and had been sick for sometime. There was no expert witness as to her mental condition. Nine witnesses including the complainant testified that she was in their opinion of unsound mind.

There is no need to discuss this testimony in detail. Leeth v. Perry, 257 Ala. 687, 60 So.2d 821. Suffice it to say that this testimony was partly to the effect that she called people by their wrong names and that she would be talking about one thing and would go off on another, that she was of unsound mind because of her inability to remember. For example, one witness testified that, "She failed to recollect me once.". Another witness testified that she had "a fainting—fading mind," but that she was not crazy. This particular witness stated that she knew what she was doing, that she was like anybody else. Another witness testified that she enjoyed talking to Lourilla Autry, that "she just sometimes looked like she had a good mind and sometimes she didn't." Another witness testified that she enjoyed talking to Lourilla, that "her mind was sorter fragly" and she would forget what she had said.

Nine witnesses for the appellee testified directly contrary to the foregoing evidence. Most of these witnesses testified that they had known Lourilla all of their lives. They described her mental status in various ways. For example, they testified that her mind was clear and bright, she was as sane as Jim, that she had as much sense as I did and more, her mind didn't weaken, she seemed to be smart in her mind, she always knew exactly what she said and she seemed to be all right "from the time I knowed her until the time she died, her mind was as strong as mine." One of these witnesses testified that Lourilla Autry was normal and of sound mind.

It might be added that the only witnesses who testified that Lourilla Autry was of unsound mind were James Donald, the appellant, and his offspring, except one Reynolds, who according to tendencies of the evidence, had hard feelings toward one of the appellees. It may be further said that some of the children of James Donald and his grandchildren and some of his in-laws, gave testimony directly contrary to the testimony for the complainant. There were also witnesses, so far as the record shows, who appear to have been unbiased, disinterested and who were competent to testify, and their testimony showed that Lourilla Autry was not non compos mentis or weak-minded but of a stronger mind than the average person.

There was some testimony as to the value of the land in litigation and different witnesses placed various values on the land ranging from $70 to $200 per acre. We see no need to go into the testimony regarding the various values placed on the land because as we shall show, this is not material to the issues in this case.

■ From our examination of the testimony it appears to us that the respondent, Lourilla Autry, had possession of a part of the land. Hence we feel that the decree of the trial court dismissing the suit is warranted so far as the statutory bill to quiet title, is concerned.

■ We believe that the real question in the case is whether the deed from Lourilla Autry to Thereasa Donald should be set aside because of mental incapacity on the part of Lourilla Autry when she executed the deed and undue influence growing out of the relationship between Lourilla Autry and Thereasa Donald. If the deed from Lourilla Autry to Thereasa Donald is valid, then it follows that the conveyance from Thereasa Donald to Gulie Cumbie is also valid.

■■ At the outset it is well to say that the relationship of aunt and niece does not of itself create such a confidential relationship as will subject to closer scrutiny a deed from an aunt to a niece which is attacked as a product of undue influence. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351. Furthermore influence in order to be undue must be such as to destroy free agency and substitute the will of another for that of the party nominally acting. Halman v. Bullard, supra; Lee v. Menefield, 249 Ala. 407, 31 So.2d 581; Harris v. Bowles, 208 Ala. 545, 94 So. 757.

Furthermore influence which is the result of sympathy and affection only is not the undue influence that is condemned by law. Halman v. Bullard, supra; Leeth v. Perry, 257 Ala. 687, 60 So.2d 821; Harris v. Bowles, supra.

We further note that while courts of equity will be astute to discover signs of fraud, imposition and unfair dealings and are eager to thwart such evil ends, yet at the same time courts of equity must be extremely careful not to interfere with the right of free disposal which inheres in the ownership of property and not to defeat the uncoerced wishes of its owner. Undue influence to avoid a conveyance must be such "as dominates the grantor's will and coerces it to serve the will of another in the act of conveying." Stroup v. Austin, 180 Ala. 240, 60 So. 879, 880; Halman v. Bullard, supra.

We also add that what constitutes undue influence depends on the facts and circumstances of each particular case. Milliner v. Grant, 253 Ala. 475, 45 So.2d 314.

It is argued by the appellant that Thereasa Donald handled and spent Lourilla's money for her own use. However, Miss Sarah Ferguson, the Post Mistress of Lost River, who ran a store there and which was about a mile and a half from the place where Lourilla Autry lived, and Thereasa Donald both testified that Lourilla Autry handled her own money. It was argued that the only income Thereasa Donald had was a welfare check but the testimony of Thereasa Donald and Miss Ferguson showed that Thereasa Donald spent Lourilla's money only for the use of Lourilla and further that Thereasa Donald worked part time and that her own son, who worked, gave her money.

Many of the witnesses stated that Lourilla Autry had told them that she wanted Thereasa to have her land. Thereasa Donald made no arrangements for the execution of the deed by Lourilla Autry to herself. On the contrary Lourilla Autry sent for Miss Sarah Ferguson and through her arranged to have the deed drawn.

It seems to be undisputed that Thereasa Donald did not know that Lourilla Autry was going to give her the land until Miss Sarah Ferguson came to have the deed drawn. We do not think that the evidence shows that Thereasa Donald had anything to do with the arrangements for drawing the deed and getting it executed. In fact, according to the testimony of Miss Sarah Ferguson, she, Sarah Ferguson, went to a lawyer in Bay Minette and got him to draw the deed.

The testimony further shows that Thereasa Donald took care of her mother while she was ill, her Aunt Ida while she was ill and her aunt Lourilla while she was ill. There is testimony that Lourilla Autry was angry with her brother, James Donald, because he would not visit her nor haul her any wood. She was angry with some of her nieces and nephews because they had taken her deeds. In other words Lourilla Autry had love, affection and sympathy for Thereasa Donald and she expressed it by giving her the deed. She had hard feelings towards and little love for the complainant and some of his children, and she expressed it in this way.

We note that Lourilla Autry had independent advice about her deed from Miss Sarah Ferguson. See Scott v. Hardyman, 218 Ala. 515, 119 So. 224. It seems that Lourilla Autry had worked for Miss Ferguson and her family for many years. They were good friends and it appears that Lourilla evidently placed confidence in her and in her judgment. The matter of the deed was discussed between them and drawn in accordance with their decision and Lourilla's wishes.

A case quite similar to the present case is that of Halman v. Bullard, supra. That case in its statement of the law supports the position of the respondents in this case and after careful consideration of the evidence we have reached the conclusion that

**488**

the court acted correctly in dismissing the bill of complaint.

The decree of the lower court is affirmed.

Affirmed.

LAWSON, SIMPSON and MERRILL, JJ., concur.