This is the second time the same parties have come before this Court. Plaintiffs John and Linda Papastefan brought suit in 1976 against defendant B L Construction Company, alleging fraud in connection with plaintiffs' purchase of a house and residential property from defendant in 1973. Plaintiffs alleged, in essence, that defendant knew of existing underground springs on the property which would cause uncontrollable flooding and render the land unsuitable for residential habitation, and concealed these facts from plaintiffs.
Plaintiffs first noticed the wet area in question during their negotiations with defendant in November-December, 1972. Plaintiffs testified that defendant explained that it had been raining heavily during this period and that a drain would be installed and the area would dry up. Plaintiffs purchased and moved into their home in early 1973. For the next year, they experienced periodic flooding which would come with a heavy rainfall, but which would disappear as the rain stopped. In March, 1974, plaintiffs noticed that their drain had broken. At this time, plaintiffs employed Cain Eaton to make repairs in order to correct the problem. Plaintiffs testified that as a result of Eaton's work they learned that the water was coming from a spring, but they did not know at that time from where it emanated or that it *Page 967 
was a running spring. They thought it was "trapped" water. Through Eaton's efforts, the property remained dry for about a year, but then the water appeared again. Mr. Papastefan testified that the water problem, when it recurred in early 1975, was much worse than it had been previously; for example, in February or March of 1975, Mr. Papastefan stepped into a flower bed outside his house and sank halfway up to his knees in mud. Mr. Eaton was again called to install additional drains, and he and Mr. Papastefan discovered about six streams of water running underneath the land. The work done by Mr. Eaton in 1975 temporarily improved the condition of the property, but in late December of 1975 or early January of 1976, the flooding became unmanageable. The Papastefans then consulted an attorney, and this suit for fraud was filed several months later, on June 8, 1976.
On the first appeal of this case, Papastefan v. B LConstruction Co., Inc., 356 So.2d 158 (Ala. 1978), plaintiffs appealed the trial court's grant of defendant's motion for summary judgment given on the ground that the applicable statute of limitations had expired. We reversed, holding that there existed a genuine issue for trial as to whether more than one year had elapsed from the time plaintiffs had discovered the alleged fraud, or should have discovered it, to the time of filing suit, thereby precluding summary judgment on the limitations issue. Upon remand to the trial court, plaintiffs put on their case in chief, after which the defendant's motion for a directed verdict was granted. Plaintiffs again appeal.
On this second appeal, both sides again argue in brief the limitations issue. The Supreme Court is not barred from reexamination of a previous ruling upon a subsequent appeal of the same case. Havard v. Palmer Baker Engineers, Inc.,293 Ala. 301, 302 So.2d 228 (1974); City of Fairhope v. Town ofDaphne, 286 Ala. 470, 241 So.2d 887 (1970). Code of 1975, §12-2-13 (formerly Tit. 13, § 28, Code of 1940), states in part:
 The supreme court, in deciding each case when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion, at that time is law, without any regard to such former ruling on the law by it; . . ..
Section 12-2-13 abrogates the common law rule that principles decided and rulings made on appeal, however erroneous, are the "law of the case" and govern the appellate court on a subsequent appeal in the same case. Stoudenmire v. DeBardelaben, 85 Ala. 85, 4 So. 723 (1888); Moulton v. Reid,54 Ala. 320 (1875). Of course, if, upon re-examination, the Supreme Court determines that its previous ruling is sound, the former decision will be reaffirmed. City of Fairhope, supra;Norville v. Seeberg, 205 Ala. 96, 87 So. 164 (1920). After examining the evidence in this case we have concluded that the trial court was correct in granting defendant's motion for a directed verdict at the conclusion of plaintiffs' case. We accordingly affirm.
Under Code of 1975, § 6-2-39, an action for fraud is subject to a one-year statute of limitations. A claim for fraud does not accrue until "the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action." See Code of 1975, §6-2-3. The "fact constituting the fraud" is deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence and which, if followed up, would have led to the discovery of the fraud. See Johnson v.Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973). Because the statute of limitations was raised as a defense by B L in this case, it was incumbent upon plaintiffs to prove that their cause of action accrued within the period of the bar. See Cities Service Oil Co. v. Griffin, 357 So.2d 333 (Ala. 1978). After reviewing the record, we have found not a scintilla of evidence that plaintiffs discovered the alleged fraud perpetrated on them after June 8, 1975 (i.e., *Page 968 
one year before suit was filed). On the contrary, the record discloses undisputed evidence that in early 1975, at the latest, plaintiffs were aware of facts sufficient to have put reasonably prudent persons on inquiry, which would have enabled them to learn of the alleged fraud had they exercised proper diligence.
Plaintiffs' claim of fraud necessarily depends upon defendant's alleged failure to disclose to them that the land upon which their house is located was permeated by a network of underground springs. The subject of our inquiry is thus when plaintiffs knew, or in the exercise of reasonable prudence, should have known, that they had been deceived about the presence of the serious water problem on their lot.
The record reveals uncontradicted evidence that plaintiffs were aware of a "wet spot" in their yard when they moved into their house in January, 1973. In April of 1973, in a list of defects submitted to defendant, plaintiffs complained that "[t]he spring or whatever at the foot of the lot causes a perpetual mud hole and a real mess. The water bubbles up from the ground. If a drain was put in, then there is something very seriously wrong. . . ." In 1974, as the result of Mr. Eaton's entrenching endeavors, plaintiffs discovered "springs of water" under their lot. When the problem became worse than ever in February or March of 1975, after Mr. Papastefan "stepped in the flowerbed and sank up — halfway up to the knee," Mr. Eaton was again called. He and Mr. Papastefan then discovered a number of additional streams under the property and yet, even after this discovery, plaintiffs did not file suit until June of 1976, some fourteen months later. The undisputed fact that the Papastefans were aware, for several years, of the springs underneath their property and of the increasing difficulty caused by the subsurface springs, was sufficient to entitle the trial court to direct a verdict in favor of defendant on the ground of the running of the one-year statute of limitations. As a result, the judgment of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.
MADDOX, FAULKNER, JONES and SHORES, JJ., dissent.