494 So.2d 393 (1986)
Jack F. DAVIS, Sarah C. Allen, Alice D. Williford, and Ruby J. Chancey
v.
Sallie C. DAVIS, individually, as Trustee and as Executrix of the Last Will and Testament of E.L. Davis, Deceased; E.L. Davis, Jr.; Hubert C. Davis; Roy R. Davis; Kathy D. Davis; Winnie M. Davis; Willo Jean Davis; and Davis Stock Farms, Inc., a corporation.
84-856.
Supreme Court of Alabama.
June 6, 1986.
As Corrected on Denial of Rehearing August 8, 1986.
John B. Crawley of Crawley & Jarrell, Troy, and Irvin J. Langford of Howell, Johnston & Langford, Mobile, for appellants.
Frank M. Wilson and Sharon G. Yates of Beasley & Wilson, Montgomery, for appellees.
*394 BEATTY, Justice.
This is an appeal by plaintiffs, Jack F. Davis, Sarah C. Allen, Alice D. Williford, and Ruby J. Chancey, all children of E.L. Davis, Sr., deceased, from an order granting defendants' motion to dismiss plaintiffs' fraud count and from an order finding that, in this case, no trust exists.
Plaintiffs filed their complaint on June 3, 1983, alleging counts in assumpsit, conversion, and fraud, and naming as defendants their mother, Sallie C. Davis; their three brothers, E.L. Davis, Jr., Hubert C. Davis, and Roy R. Davis; their brothers' wives; and Davis Stock Farms, Inc.
In an earlier petition to this Court, plaintiffs sought a writ of mandamus to the trial judge directing him to grant plaintiffs a jury trial as to their counts for assumpsit and conversion. This Court issued the writ and ordered the trial court to determine, as a matter of law, whether the trust, upon which the assumpsit and conversion counts were predicated, existed. After conducting a hearing on the question, the trial court found that there was no trust. We affirm.
The facts relevant to this appeal follow:
E.L. Davis, Sr., died April 24, 1973. In his will, Mr. Davis left the residue of his property (which, in fact, represented all of his property) to his wife, Sallie C. Davis, as trustee for herself and their children.
On June 6, 1973, before the probate of the will of E. L. Davis, Sr., all of the Davis children executed a warranty deed conveying all of their interest in their father's real property to their mother, Sallie Davis. On the same date, they each also executed disclaimers of any interests in their father's estate. At the time these documents were executed, all of the children had reached the age of majority, and all had had an opportunity to read their father's will. On June 7, 1973, the day after the deed and disclaimers were executed, the will of E.L. Davis, Sr., was admitted to probate by the Probate Court of Pike County.
Some four years later, on May 3, 1977, the widow, Mrs. Sallie Davis, sold approximately 5,700 acres of the realty to two of her sons, E.L. Davis, Jr., and Hubert C. Davis, for $679,108.00, or approximately $102.00 per acre. This was the approximate value originally placed on the property by the Internal Revenue Service for estate tax purposes. On May 17, 1977, Mrs. Davis conveyed the balance of the estate lands (398½ acres) to her son Roy R. Davis. (However, it is the conveyance by Mrs. Davis to E.L. Davis, Jr., and Hubert C. Davis which is the primary focus of plaintiffs' attack.) On that same day, May 17, Mrs. Davis gave each of her seven children a check for $25,000 and purchased each of her eighteen grandchildren a $10,000 certificate of deposit. Approximately six years later, on June 3, 1983, plaintiffs filed this action.
By their complaint, plaintiffs allege that, at a meeting called by Mrs. Davis and her attorney, all of the Davis children were asked to deed their interest in their father's estate lands to their mother, and to further disclaim any interest in their father's estate. Plaintiffs claim that Mrs. Davis told the children that the purpose of the conveyance was to reduce federal estate taxes and that she would reconvey the property to the children after she had paid the estate taxes. Plaintiffs also allege that a confidential relationship existed between Mrs. Davis and the children and that Mrs. Davis was the dominant party. Plaintiffs further aver that the conveyance by the children to their mother created a trust which was in substance the same as the written trust provided for under the terms of the will of E.L. Davis, Sr., and that Mrs. Davis transferred the property to her co-defendants, who continue to hold the land.
In their fraud counts, plaintiffs allege that E.L., Hubert, and Mrs. Davis entered into a conspiracy whereby Mrs. Davis would convey the property to E.L. and Hubert, for substantially less than the fair market price, after their father's estate had been settled. Plaintiffs also allege that representations made by Mrs. Davis, on behalf of herself and her co-defendants concerning her alleged intention to reconvey *395 the property, were false and made with the intention of inducing plaintiffs to transfer their interests in their father's estate and that such false representations did, in fact, induce plaintiffs to transfer the property to their mother. In addition, plaintiffs aver that when discovery was had in December 1983 plaintiffs learned that E.L. and Hubert had begun to depreciate the property in May 1973, prior to the June 6, 1973, deed from the children to their mother.
On September 24, 1984, before plaintiffs sought the writ of mandamus from this Court on the jury demand issue, the trial court granted defendants' motion to dismiss plaintiffs' fraud claim as barred by the statute of limitations. Thereafter, in accord with this Court's order in Ex parte Davis, 465 So.2d 392 (Ala.1985), the trial court held a hearing to determine whether a trust, upon which the assumpsit and conversion counts were predicated, existed. Based on the evidence presented at the hearing, the trial court made the following findings:
"1. That the will of E.L. Davis, Sr., in so far as it attempts to set up a trust, is vague and ambiguous.
"2. That an express trust was nevertheless created by the will of E.L. Davis, Sr.
"3. That after the death of E.L. Davis, Sr., beneficiaries of the trust effectively terminated the trust by their actions which commenced in May of 1973 after the death of E.L. Davis, Sr., and which culminated on June 6, 1973, at which time the beneficiaries executed a deed and bill of sale conveying the assets of the estate of E.L. Davis, Sr., deceased, to Sallie C. Davis, and also executed a separate instrument disclaiming any interest in the assets of the estate.
"4. That no Defendant, nor anyone acting on their behalf, made any false representation to Plaintiffs.
"5. No Defendant, nor anyone acting on their behalf was guilty of any fraud, conversion, or undue influence at any time.
"6. That the termination of the trust created by the will of E.L. Davis, Sr., was done by the children of E.L. Davis, Sr., including the Plaintiffs, voluntarily and of their own free will and accord.
"7. That the termination of the trust by the Plaintiffs was approved by Defendant Sallie C. Davis.
"8. That the transaction between Defendant Sallie C. Davis and her children was conducted in good faith and was equitable to all parties under the total circumstances of this case.
"9. That the transaction between Defendant Sallie C. Davis and her children was for good consideration.
"10. That at all times Defendant Sallie C. Davis acted in good faith and was completely innocent of allegations of fraud and misconduct made against her.
"11. That no resulting trust was created.
"12. That no constructive trust was created.
"13. That Plaintiffs' remaining causes of actions on assumpsit and conversion are based upon and depend upon the existence of the trust.
"14. That, there being no trust, either expressed, resulting or constructive, in effect on the date of the conveyance, transfer, and disclaimer, to-wit June 6, 1973, there is nothing further for this Court or a jury to hear."
It is from the above order and from the dismissal of their fraud claim that plaintiffs appeal.
There are two dispositive issues presented by this appeal:
(1) Was the trial court correct in granting defendants' motion to dismiss plaintiffs' fraud count on the basis that it was barred by the statute of limitations?
(2) Were the disclaimers executed by the plaintiffs valid?

I. THE TIMELINESS OF THE FRAUD CLAIM
Plaintiffs argue that the trial judge erred in granting defendants' motion to *396 dismiss the fraud count on the ground that it was barred by the statute of limitations. Plaintiffs further contend that the applicable standard of review is that applicable to motions to dismiss. However, in Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala. 1986), this Court stated:
"At the outset, it is necessary to determine the standard of review applicable in this case. Plaintiffs state in their brief the standard applicable to motions to dismiss, namely, that `a plaintiff's complaint should not be dismissed on a motion to dismiss unless it appears beyond all doubt that the plaintiff can prove no facts in support of his claim which would entitle him to relief under some legally cognizable theory'.... However, where matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), A.R.Civ.P., regardless of its denomination and treatment by the trial court.... Once matters outside the pleadings are considered, the requirements of Rule 56, A.R.Civ.P., become operable and the `moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.' ..." (Citations omitted.) (Emphasis added.)
In the present case, the trial court's order granting defendants' motion to dismiss discloses on its face that matters outside of the pleadings were considered. Because matters outside the pleadings were considered by the trial court in ruling on the defendants' motion to dismiss, that motion was converted into a motion for summary judgment. Accordingly, we must determine, on review, whether there existed a genuine issue as to any material fact or whether defendants were entitled to judgment as a matter of law. In so doing, we must view that portion of the record before the trial court at the time it ruled on the motion in the light most favorable to plaintiffs, since they opposed the motion. Boles v. Blackstock, supra, and Papastefan v. B & L Construction Co., 385 So.2d 966 (Ala. 1980).
The statutory limitations period applicable to this action for fraud is one year, Code of 1975, § 6-2-39 (since repealed); however, the statutory period does not begin to run until "discovery by the aggrieved party of the fact constituting the fraud," Section 6-2-3. (Effective January 9, 1985, the statutes of limitations were changed so as to allow two years in a fraud action. See § 6-2-38 and § 6-2-3.) Furthermore,
"The `fact constituting the fraud' is deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence and which, if followed up, would have led to the discovery of the fraud...."
Bank of Red Bay v. King, 482 So.2d 274, 278-79 (Ala.1985) (quoting from Papastefan, 385 So.2d at 967).
When the trial judge ruled on the motion to dismiss, he had before him not only the pleadings but also the affidavits of defendants Sallie C. Davis, E.L. Davis, Jr., and Hubert C. Davis, and the deposition of plaintiff Jack Davis. In their affidavits, defendants all state that the conveyance by Sallie C. Davis to E.L. Davis, Jr., and Hubert C. Davis in May of 1977 was known to the plaintiffs at the time of the conveyance. No evidence, either by affidavits or otherwise, was submitted by plaintiffs to controvert defendants' affidavits. Further, plaintiff Jack Davis deposed the following:
"Q. During the lifetime of your mother, has she ever given you any lump sum money?
"A. Yes, sir.
"Q. And when was that, please?
"A. May the 17th, 1977, I think, on or about.
"Q. This would be roughly the time in which Esker and Hubert purchased the six thousand and so acres from your mother; is that correct?

*397 "A. Yes, sir, some five to ten days later.
"Q. How much money did she give you?
"A. Gave me twenty-five thousand dollars.
"Q. Were you aware at the time that this was some of the proceeds from the sale of the land to Esker and Hubert?

"A. Yes, sir. That's when I first knew that she had sold the land." (Emphasis added.)
Based on the above uncontroverted evidence, it is clear plaintiffs knew of their mother's conveyance to E.L. and Hubert Davis within two weeks thereafter. This was actual knowledge of facts indicating that plaintiffs' mother had no intention, and, in fact, no ability, to reconvey to them their interests in the property. Furthermore, this conveyance was at least sufficient to put plaintiffs on inquiry as to any alleged conspiracy between their mother and their brothers. Additionally, although it was given at the subsequent hearing on the existence of the trust, all of the plaintiffs gave testimony to the effect that they learned of the conveyance to their brothers E.L. and Hubert about the time the conveyance occurred. Plaintiffs also testified that they knew that, when they were given the $25,000 checks from their mother, she had sold the property.
Since plaintiffs had notice of facts constituting the fraud or at least sufficient notice to put them on inquiry as early as May 17, 1977, we find that the statutory period began to run at that time. Plaintiffs did not bring their fraud claim until June 3, 1983, almost six years later; therefore, the trial court correctly dismissed plaintiffs' fraud claim on the ground that it was barred by the statute of limitations.

II. THE VALIDITY OF THE DISCLAIMERS
Plaintiffs maintain that an express trust came into existence upon the death of E.L. Davis, Sr., and that their mother, acting as trustee, was guilty of self-dealing when she "induced" plaintiffs to execute the deed conveying all the real property owned by E.L. Davis, Sr., to her, and to disclaim all rights in the estate of their father. Thus, plaintiffs claim that the conveyances by Mrs. Davis to her co-defendants were voidable.
Although we have already set forth the findings of the trial court, we wish to call attention again to three of those:
"2. That an express trust was nevertheless created by the will of E.L. Davis, Sr.
"3. That after the death of E.L. Davis, Sr., beneficiaries of the trust effectively terminated the trust by their actions which commenced in May of 1973 after the death of E.L. Davis, Sr., and which culminated on June 6, 1973, at which time the beneficiaries executed a deed and bill of sale conveying the assets of the estate of E.L. Davis, Sr., deceased, to Sallie C. Davis, and also executed a separate instrument disclaiming any interest in the assets of the estate.
"....
"14. That, there being no trust, either expressed, resulting or constructive, in effect on the date of the conveyance, transfer, and disclaimer, to-wit June 6, 1973, there is nothing further for this Court or a jury to hear." (Emphasis added.)
We agree with the trial court's finding that no trust was in effect on June 6, 1973.
While the will of plaintiffs' father contained language providing for a trust, the children disclaimed their rights to any part of the estate after their father died but before the will was admitted to probate. The disclaimers are express, clear, and unequivocal, providing, "I do hereby disclaim any interest in and to all assets of the estate of said deceased." A disclaimer of interest, however, like any other kind of waiver or release, can be contested on the basis of fraud or undue influence. Cleere v. Cleere, 82 Ala. 581, 3 So. 107 (Ala.1887). Although plaintiffs did not expressly attack, on the basis of fraud or undue influence, *398 the validity of the disclaimers at the hearing below, and do not do so on appeal, plaintiffs, nevertheless, did attempt to prove fraudulent inducement and/or undue influence, which could, as a matter of law, have had a bearing on the validity of the disclaimers.

A. Fraudulent Inducement
Plaintiffs argue that Mrs. Davis fraudulently induced them to execute the deed and disclaimers by promising to reconvey the property. At the hearing on the existence of a trust, plaintiffs testified that they executed the deed and disclaimers because their mother wanted them to sign the documents in order to decrease the amount of estate tax that would have to be paid and because she had promised she would reconvey the property to the children after she paid the estate tax. On the other hand, Mrs. Davis denied that she ever, at any time, promised to reconvey the property to her children. Billy Gibson, Mrs. Davis's attorney, and Robert Lowery, the notary present at the June 6 execution of the deed and disclaimers, testified that Mrs. Davis made no such promise in their presence.
As stated above, the trial court found that none of the defendants made any false representations to the plaintiffs. When evidence is presented ore tenus, without a jury, the court's factual findings are presumed correct and a judgment based thereon will not be disturbed on appeal unless it is plainly and palpably erroneous. Wadsworth House Movers, Inc. v. Salvage One Demolition, Inc., 474 So.2d 686 (Ala.1985). In light of conflicting evidence and the ore tenus rule, we find that the trial judge did not err in finding that the defendants did not fraudulently induce plaintiffs to execute the deed and disclaimers.

B. Undue Influence
In order to establish undue influence, a confidential relationship must be shown to have existed. McCollough v. Rogers, 431 So.2d 1246 (Ala.1983). In Seals v. Seals, 423 So.2d 222, 224 (Ala. 1982), this Court explained:
"The relationship of parent and child is confidential as it relates to the question whether the deed from parent to child can be set aside as having been procured by undue influence. The burden was on [the defendant] to rebut the presumption of undue influence if the evidence tended to show that he was the dominant party....

"In order for undue influence to arise, the influence must destroy the free agency and substitute the will of another for that of the person nominally acting. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351 (1954). In Halman, the Court, citing Harris v. Bowles, 208 Ala. 545, 94 So. 757 (1922), stated:
"`[S]olicitation does not amount to undue influence unless the grantor be worn out with importunities so that his will gives way.... [Emphasis added in Halman.]
"`... [U]ndue influence is charged, and must necessarily be proven to overthrow the transaction. Influence which is the result of sympathy and affection only is not the undue influence that is condemned by the law.'..." (Emphasis added.)
At the hearing, the plaintiffs testified (1) that when plaintiffs were growing up, their mother and father would discipline them if they did not obey; (2) that the plaintiffs signed the deed and disclaimers only because their mother asked them to, promising to reconvey the property; and (3) that when one of the plaintiffs, before signing the deed and disclaimer, questioned whether she would get her share of the property back, the family's attorney, who was present at the execution of the deed and disclaimers, said, "Well, don't you trust your mother?" and her mother started to cry. This was the only testimony related to the issue of undue influence.
Defendants denied that Mrs. Davis promised to reconvey the property; furthermore, Mrs. Davis's attorney testified that the plaintiff who questioned whether she would get her share of the property back *399 actually readily signed the deed and her disclaimer, and even encouraged two of the other plaintiffs to sign the documents. In addition, even if defendants had admitted that plaintiffs' allegations were true, Mrs. Davis's action could not be held to have amounted to a destruction of free agency or a wearing down of plaintiffs' wills. All plaintiffs were adults and living away from their mother's home when they executed the deed and disclaimers, and any fear of discipline, given these circumstances, would not have been reasonable. At best, we can only conclude that any influence exerted by Mrs. Davis was "`the result of sympathy and affection only,'" but that influence "`is not the undue influence that is condemned by the law.'" Seals, supra, 423 So.2d at 224, quoting Halman v. Bullard.
The issue of dominance was a question of fact for the trial court, which heard the ore tenus evidence. McCullough, supra. In light of conflicting evidence and the ore tenus rule, we find that the trial court did not err in finding that Mrs. Davis did not exercise undue influence over her children.
The disclaimers having withstood the challenges of fraud and undue influence, we hold them valid. The legal effect of the valid disclaimers is that the property interests disclaimed fell into the residuary estate, and, upon probate of the will, Mrs. Davis, as sole residuary devisee, took all of the disclaimed shares of the estate. See City National Bank of Birmingham v. Andrews, 355 So.2d 341 (Ala.1978).
In light of the above, we agree with the trial court's conclusion that there was no trust in effect on June 6, 1973, and there was nothing further for the trial court or a jury to hear.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., concur.

ON APPLICATION FOR REHEARING
BEATTY, Justice.
OPINION CORRECTED; APPLICATION OVERRULED.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ. concur.