177 So.2d 915

James C. GILBREATH

v.

Alvin L. GILBREATH, a Non Compos Mentis, etc.

6 Div. 867.

Supreme Court of Alabama.

March 11, 1965.

Rehearing Denied Sept. 2, 1965.

Dempsey Pennington, Birmingham, for appellant.

Rogers, Howard, Redden & Mills, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal from a final decree of the Circuit Court of the Tenth Judicial Circuit of Alabama, in Equity, setting aside a warranty deed conveying certain described real estate executed on May 29, 1959. On that date, Alvin L. Gilbreath conveyed to himself and James C. Gilbreath, his nephew, jointly with the right of survivorship, certain real estate which is the subject matter of this suit.

On May 24, 1961, on a petition filed by McKinley Gilbreath, a brother, Alvin L. Gilbreath was declared a non compos mentis by the Probate Court of Jefferson County, Alabama, and Hon. Ben A. Engel, the county guardian, was appointed his legal guardian.

From a bill in equity, filed in the name of the said guardian to set aside the aforementioned deed, the trial judge entered a final decree declaring the said deed null and void, and divesting James C. Gilbreath, appellant, of all right, title and interest in the lands conveyed. From the decree, James C. Gilbreath appealed.

The evidence discloses the following: Mr. Alvin L. Gilbreath, the appellee, is a retired railroad trainman. He had been afflicted for several years with diabetes and high blood pressure. For a period of three weeks in 1957, his illness required hospitalization. After the death of his wife in 1957, Mr. Gilbreath lived alone in his Birmingham, Alabama, home, which he owned, and in which he had lived for most of his life. He had a personal savings account which amounted to approximately $11,000. He had no surviving children and no descendants of deceased children. He had no relatives within the city, but he did have one living brother, McKinley Gilbreath, and several nieces and nephews, among them the appellant, James C. Gilbreath. James C. Gilbreath lived in Gadsden, a distance of some 60 miles from Birmingham. McKinley Gilbreath lived in Guntersville, Alabama, some 100 miles from Birmingham.

In the latter part of May, 1959, the appellee telephoned his nephew, James C. Gilbreath, at his home in Gadsden and requested that his nephew visit him. The appellant, James C. Gilbreath, came to Birmingham on May 29, 1959, and together, he and Alvin L. Gilbreath went to downtown Birmingham, where Alvin L. Gilbreath, after attending to some personal business, went to his bank and converted his personal savings account into a joint account, which gave to James C. Gilbreath the right of withdrawal. Thereafter, they went to the office of a local attorney, who, at the request of Alvin L. Gilbreath, prepared the deed which is the subject matter of this litigation.

The deed conveyed Alvin L. Gilbreath's real estate to himself and to James C. Gilbreath jointly, with the right of survivorship. They then proceeded to the Probate Court of Jefferson County where the deed was recorded by Alvin Gilbreath. The next day, James C. Gilbreath returned to his home in Gadsden, Alabama.

In February, 1961, the appellee became ill and was carried to the hospital for treatment of an infected foot, hardening of the arteries, diabetes and dietary deficiency. He was discharged about six weeks later.

Shortly after his entry to the hospital in February, 1961, possibly a day or two, appellee's brother, McKinley Gilbreath, came from his home in Guntersville to the hospital where appellee was a patient, and actively assumed control of his brother's affairs. During this period, he learned of the transactions which had occurred on May 29, 1959, and, in particular, he learned of the deed which is the subject matter of this suit.

On February 24, 1961, an attorney employed by McKinley Gilbreath, petitioned the Jefferson County Probate Court, asserting that appellee was mentally incompetent, and praying that the court appoint a guardian for him, which resulted in Hon. Ben A. Engel being named his legal guardian.

On August 18, 1961, the present litigation was commenced by Hon. Ben A. Engel, as guardian of Alvin L. Gilbreath. The bill of complaint alleged that the appellee, Alvin L. Gilbreath, was mentally incapable of executing the deed, the subject matter of this suit, and that the same was a product of undue influence exerted by appellant upon appellee, and that there was no delivery, or an ineffective delivery, of the deed.

Evidence was heard ore tenus by the trial court, and he rendered a final decree granting the relief prayed for in the bill of complaint based on a finding of mental incapacity. The trial court found it unnecessary to reach any conclusion concerning the charge of undue influence and

the failure of delivery. James C. Gilbreath appealed.

The first question is whether or not this action should be brought by the guardian. In other words, was the guardian charged with the duty of only managing the ward's estate as it was delivered to him, or was he under a positive duty to actively exploit every transaction and collect every "possible" debt owed to the estate of the ward?

In Abrams v. Abrams, 225 Ala. 622, 144 So. 828, it was said:

"In cases like the one now under consideration, the courts cannot overlook or be forgetful of the fact that a person of sound mind may dispose of his property as he sees fit, and it is the solemn duty of the court to uphold a conveyance, where understandingly made, by persons of sound mind, although the grantee may be a relative, and the conveyance is wholly voluntary, in the absence of any evidence of undue influence in fact, or the presumption of such arising from the relation of the parties. * * *"

All transactions before derangement or during a lucid period must be upheld and enforced by a guardian. Essentially, the duty of a guardian is the performance of a personal service for the ward, management of his estate. Davis v. State, 237 Ala. 143, 185 So. 774.

If, however, the person disposing of the property is declared to be, subsequent to the disposition, non compos mentis, and there is, at least, a reasonable question as to his sanity at the moment of disposition, "[i]t is the positive duty of the guardian to collect the assets of his ward, to reduce to possession choses in action, and to collect debts due the estate of his ward." Cox v. Williams, 241 Ala. 427, 3 So.2d 129.

Applying these principles of law to the present case, we hold that Hon. Ben A. Engel, the appointed legal guardian of Alvin L. Gilbreath, had, at least, reasonable cause to believe that Alvin L. Gilbreath was incapable of competently handling his ordinary business affairs at the time he executed the deed in question and the suit was properly brought by the guardian.

The testimony of Dr. Arthur M. Freeman was that in September, 1957, approximately two years before the transactions which are the basis of this action, Alvin L. Gilbreath "had sustained definite, severe, and permanent nerve and brain damage." This testimony alone was sufficient to support a finding of reasonable cause, and to impose a definite duty on the guardian to bring this action.

It is true that the right to control one's property is a sacred right and should not be taken away without urgent reason. Consequently, the courts must be extremely careful "not to interfere with that right of free disposal which inheres in the ownership of property." Stroup v. Austin, 180 Ala. 240, 60 So. 879.

The real issue relied upon for reversal is whether or not there was sufficient evidence to justify the trial court in finding that Alvin L. Gilbreath lacked the mental capacity necessary in executing the deed.

Where the evidence is heard orally by the trial judge, his conclusions therefrom have the effect of a jury's verdict and his finding should not be disturbed unless plainly erroneous or manifestly wrong. Mize v. Mize, 273 Ala. 369, 141 So.2d 200; Maxwell v. City of Birmingham, 271 Ala. 570, 126 So.2d 209, 211; Board of Zoning Adjustment for the City of Lanett v. Boykin, 265 Ala. 504, 508, 92 So.2d 906.

Appellant earnestly insists that the decree rendered was plainly erroneous, and certainly manifestly wrong. In the case of Fortune v. Boutwell, 271 Ala. 592, 126 So.2d 116, it is said:

"* * * Incapacity to understand the business transacted, as distinguished from mere sickness, must be proved in order to avoid a conveyance. * * *"

Mere weakness of intellect is not the same as mental incapacity. Sanity being a normal condition of the human mind, the law presumes that every person of full age has sufficient mental capacity to make a deed.

Appellee introduced the testimony of five witnesses, among them two doctors of medicine whose testimony concerned the mental capacity of Alvin L. Gilbreath. Dr. Arthur Freeman who examined Mr. Gilbreath in September, 1957 testified to the "definite severe and permanent nerve and brain damage." Dr. James M. Morgan, who examined Mr. Gilbreath in February, 1961, testified that he was mentally incompetent and incapable of transacting ordinary business affairs and that the condition was caused by arteriosclerosis, hardening of the arteries, which was permanent in its nature. The other witnesses testified to the general lack of mental capacity which they observed in Mr. Gilbreath.

The appellant's remaining witnesses all testified to the fact that they felt Mr. Gilbreath could have transacted his ordinary business affairs.

The question of mental capacity being adjudicated, the trial court who heard the witnesses and observed their demeanor throughout a careful trial reached the conclusion that Mr. Alvin L. Gilbreath lacked the mental capacity necessary to execute the deed on May 29, 1959.

■ This Court has examined the evidence and has found that there is reasonable support for the trial court's conclusion on the issue of the mental capacity of Alvin L. Gilbreath to make the deed here in question, and we cannot say that the conclusion was plainly erroneous or manifestly wrong.

Appellant's assignments of error 19, 20, 21, 22, 23 and 24 are grouped together and argued in bulk.

■ Where unrelated assignments of error are argued in bulk, they must all fail unless valid as to all such rulings. 2A Ala. Dig., Appeal and Error, ☞736; First Na-

tional Bank of Birmingham v. Lowery, 263 Ala. 36, 81 So.2d 284; Roan v. Smith, 272 Ala. 538, 133 So.2d 224; Stewart v. Weaver, 264 Ala. 286, 87 So.2d 548; Ratliff v. Ratliff, 275 Ala. 560, 156 So.2d 725.

■ Appellant's assignment of error 19 is based on the fact that the trial court allowed Mr. McKinley Gilbreath to remain in the courtroom in violation of the rule concerning the exclusion of witnesses. This ruling was within the sound discretion of the trial court and we cannot say that he grossly abused his discretion. Therefore, assignment of error 19 is without merit, and under the rule just stated we will not consider assignments of error 20, 21, 22, 23 and 24.

Appellant's assignments of error 25, 26, 27 and 28 are likewise argued together, or in bulk, and are subject to the above-stated rules.

■ Another well-known rule is that a party may not sit idly by and voice no objection to a question until after it is answered, speculating as to what the answer will be, and if unsatisfactory, thereafter invoke the ruling of the court.

■ The questions asked under assignment of error 27 were not objected to until after witness had answered. Furthermore, no motion to exclude the answers were made. This assignment of error is without merit and assignments of error 25, 26 and 28, which are grouped and argued with assignment of error 27, will not be considered.

Assignments of error 29, 30, 31, 32, 33 and 34 are too general to merit further discussion. Moreover, these assignments of error have already been effectively answered.

We find no reversible error in the case, and it is due to be, and is, affirmed.

Affirmed.

SIMPSON, MERRILL and HARWOOD, JJ., concur.