ADAMS, Justice.
This case involves litigation between brothers, sisters and a nephew, concerning land owned by their father, mother and grandparents, Mr. and Mrs. Charles A. Anderson. Paul, Addie and Charles sued Homer, Cleone, Annie and Herman. Homer is the son of Shelby and the grandson of Mr. and Mrs. Charles Anderson. The suit sought cancellation of four deeds, on the grounds of failure of consideration, fraud and undue influence. Attached as an appendix to this opinion is defendant’s rendition of his Exhibit M, which graphically sets forth the location of each parcel and describes improvements placed thereon after each conveyance made by the grantors. This case was tried non-jury before the Circuit Court of Pike County and judgment was rendered in favor of all defendants on April 23,1980, from which one of the plaintiffs, Paul Anderson, appeals.
On October 14, 1968, Mr. Anderson and his wife, in consideration of $15,000.00, conveyed Parcel 1, comprising 3.73 acres to Shelby and Homer, who erected on it, at the cost of $50,000.00, a building to house their John Deere tractor and implement dealership. On December 4, 1970, Mr. and Mrs. Anderson executed a deed to Shelby and Homer, comprising .13 acres. Mr. Anderson stated that he noticed that the original Parcel 1 sat at an angle to the highway and that he wanted to square up this original parcel by adding the .13 acres, which formed a triangle. This land is called Parcel 1-A. Shelby eventually deeded his interest in parcels 1 and 1-A to his son, Homer. Mrs. Anderson died in December 1970 and Mr. Anderson died April 29, 1977.
On March 7, 1974, Mr. Anderson sold to Homer, Parcel 2, comprising 1.23 acres. In the spring of 1976, Homer entered into negotiations with Garnett Rigsby Ford, Inc., and Ford Motor Company concerning construction by Homer and lease by Rigsby, of a Ford dealership building on Parcels 2 and 3, if he should be able to acquire Parcel 3. He discussed the proposed purchase with his grandfather, who discussed the purchase with his attorney and the grandfather indicated to the grandson a willingness to sell, but became seriously ill and was admitted in a comatose condition to the hospital on May 26, 1976. Mr. Anderson, however, made a remarkable recovery and was released from the hospital on July 21, 1976. On July 21, 1976, Homer made an offer to purchase Parcel 3 from his grandfather for $25,000.00. Mr. Anderson consulted his own attorney, who suggested that he go up $5,000.00. On July 27, 1976, Homer’s attorney called Mr. Anderson’s attorney and told him he would pay the additional $5,000.00, and on that same day Homer purchased a cashier’s check payable to Mr. Anderson in the amount of $30,000.00 and delivered same to him in the presence of his attorney and Mr. Anderson’s attorney and closed the transaction for Parcel 3.
Homer then proceeded to construct on Parcels 2 and 3, the Garnett Rigsby Ford building at a cost of more than $200,000.00. He borrowed $150,000.00 from Troy Bank and Trust Company, giving it a mortgage on the property to secure the loan. The appellant, Paul Anderson, knew about the *833 construction of the Ford building, as well as the construction of the John Deere building by Shelby and Homer.
The plaintiffs originally filed this suit and requested a jury trial. On December 18, 1979, the Circuit Court issued an order to the effect that the issues of undue influence and capacity to convey would be submitted to an advisory jury. On January 14, 1980, both sides announced ready when the case was called. After the court had finished its voir dire of the jury, plaintiffs’ counsel asked whether the court was going to call the witnesses then, or at a later date. The court indicated it would do whatever the plaintiffs wanted in this regard. The plaintiffs then agreed to go ahead with the rest of the voir dire. After the jury was put into the box, the court called the witnesses, and plaintiffs, for the first time, found out that two witnesses had been excused by the court for medical reasons. Plaintiffs moved for a mistrial, claiming that the court should have informed them that it had excused these witnesses prior to voir dire of the advisory jury. Thereupon, the court ruled that the plaintiffs would have to proceed to try the case with the advisory jury in the box, or have the case continued to a later date when the case would be tried non-jury, but they would have the opportunity to add additional parties. Plaintiffs chose to try the case non-jury and added as defendants a brother, along with the two sisters who had been formerly subpoenaed as witnesses.
As we see it, the issues presented by the facts and framed by the briefs of the parties are as follows:
1. Did the trial court err in failing to notify the attorneys of medical excuses that it had given to witnesses prior to voir dire examination of the prospective advisory jury?
2. Did the trial court err in deciding that the grantors possessed the requisite mental capacity and were not unduly influenced in executing each deed at issue in this case?
To each question we answer in the negative and affirm.
Our analysis must begin with a determination of what rights plaintiff Paul Anderson had to an advisory jury in a suit to cancel deeds based on lack of mental capacity and undue influence. It is hornbook law that a plaintiff in a suit to cancel a deed on the grounds stated by the plaintiff herein is not entitled to a jury as a matter of right. This is not to say that the court, having before it entirely equitable matters, may not on its own decide that it would like an advisory jury. This is entirely discretionary with the court and it may change its mind if it sees fit. Nesmith v. Vines, 248 Ala. 72, 26 So.2d 265 (1946); Lucas v. Scott, 247 Ala. 183, 24 So.2d 540 (1945); Hill v. Lindsey, 223 Ala. 550, 137 So. 395 (1931); ACRP, Rules 39(c) and 52. But the plaintiff contends that inasmuch as the court, in a pretrial order, indicated that this case would be tried with an advisory jury, that somehow this decision was fixed in concrete. Although we have said that we will not disturb a trial court’s refusal to amend a pretrial order where such refusal is reasonable and where no substantial prejudice results to one of the parties, this does not mean that the trial court can never amend its pretrial order. Westric Battery Company v. Standard Electric Company, 522 F.2d 986 (10th Cir.1975); Trask v. Susskind, 376 F.2d 17 (5th Cir.1967); Hughes v. Arlando’s Style Shop, 399 So.2d 830 (Ala. 1981); Currie v. Great Central Insurance Company, 374 So.2d 1330 (Ala.1979).
We opine that plaintiff’s difficulty with the advisory jury is largely of his own making. It is the responsibility of the lawyers to determine if their witnesses are present or available when they announce ready for trial. The mere fact that the court excused the two witnesses claimed indispensable by the plaintiff, does not diminish that fundamental responsibility. A brief excerpt from the record of the colloquy between the court and counsel will clearly indicate the *834 extent of counsel’s involvement in the problem presented here:
MR. BYRD: Thank you very much, Your Honor. There’s one question that comes to mind; is the Court going to call the witnesses and put them in a witness room at this time or does the Court intend to do that at a later date?
THE COURT: I haven’t given it much thought, Mr. Byrd. I’d be glad to do it either way you want to, call them, now, get a jury, then call them, anyway you want to.
MR. BYRD: However it would please the Court will be all right with us.
THE COURT: I don’t have any preference.
MR. BYRD: All right. We’ll go ahead with the voir dire, then.
Later on, the court and plaintiff’s counsel had the following colloquy:
MR. BYRD: We understand from the letters that we see here that Annie and Cleone are both unable to be here. They are indispensable witnesses in this case, absolutely necessary to the trial of this case, we feel. Of course, that was one of the reasons I mentioned the call of the witnesses prior to the voir dire, and the striking of the jury.
THE COURT: Well, I distinctly remember giving you a choice—
MR. BYRD: Yes, sir. That’s true. I assume responsibility for it.
Counsel cannot have it both ways. He cannot accept responsibility for what happened, and then on appeal, seek to reverse the court because of the problem he created.
Plaintiffs’ complaint seeks to cancel four deeds executed by their father and mother, on the grounds of lack of mental capacity and undue influence. Plaintiff Paul Anderson’s brief concentrates mostly on setting aside the last deed, which was executed by his father six days after he had suffered a serious illness that required extensive hospitalization. Although it is true that Mr. and Mrs. Anderson were elderly when the deeds were signed (Mrs. Anderson only signed the deeds of October 14, 1968 and December 4, 1970), Mrs. Anderson being 84 years of age when the 1968 deed was signed and Mr. Anderson being 86 years of age at that time, both having had physical ailments, this is insufficient to prove that they did not have the requisite mental capacity to execute a conveyance. We stated the law with reference to mental incapacity to void a conveyance of land in the case of Fortune v. Boutwell, 271 Ala. 592, 595, 126 So.2d 116, 118 (1960). We observed in that case as follows:
We have stated the governing principle in varying language: Incapacity to understand the business transacted, as distinguished from mere sickness, must be proved in order to avoid a conveyance. Stanfill v. Johnson, 159 Ala. 546, 49 So. 223. A person with sufficient mental ability to comprehend what he is doing and understand the nature of the act and its consequences has capacity to make a deed. Frederic v. Wilkins, 182 Ala. 343, 62 So. 518; Harris v. Bowles, 208 Ala. 545, 94 So. 757; Hall v. Britton, 216 Ala. 265, 113 So. 238. Mere weakness of intellect is not sufficient to incapacitate a grantor and to warrant cancellation of a deed on ground of mental incapacity. McKinney v. Weatherford, 242 Ala. 493, 7 So.2d 259. The law presumes everyone to be sane until the contrary is proved, and it is unsoundness of mind and incapacity to understand the business transacted, in contradistinction to mere weakness, which must be proved in order to avoid a conveyance. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351. Likewise, advanced age or mental enfeeblement is not sufficient .to invalidate a conveyance unless the grantor’s mind was so impaired as to render her incapable of acting intelligently and voluntarily in the conveyancing. Lee v. Menefield, 249 Ala. 407 31 So.2d 581.
It would serve no useful purpose to detail the statements of witnesses which support *835 the court’s judgment that Mr. and Mrs. Anderson had sufficient legal capacity to execute the conveyances in question here, and were not unduly influenced. Although Mr. Anderson had been seriously ill before the execution of the last deed, he did sign it in the presence of his lawyer, obtained the $5,000.00 increase in the price originally offered, and quipped at the closing with the lawyers about two lawyers who had similar telephone numbers and questioned which lawyer was losing business to the other. Over the years he showed great mental acumen — he was able to get an increase in the amount of money for property sought in a state condemnation hearing, and on his own, thought to give to his son Shelby and his grandson Homer additional property which would square Parcel 1.
The testimony of Betty Russell, a registered nurse, now an instructor at Troy State University School of Nursing, is particularly instructive on the question of Mr. Anderson’s mental capacity during the latter stage of his life. She testified that she visited Mr. Anderson every two weeks after his discharge from the hospital up until the time of his death, her visits lasting 30 to 45 minutes. She stated that he was never irrational. A short excerpt from her testimony is as follows:
A. Yes, we always talked about — I mean I talk with every patient, but the thing that really amazed me, I think about him was that he was so up to date in current events. Like he talked a lot about politics and it was relevant.
The record reveals that the plaintiffs lived away from their father and the defendants lived in Troy, Alabama, in close contact with him. The plaintiffs did not visit him very often.
In Gilbreath v. Gilbreath, 278 Ala. 289, 293, 177 So.2d 915, 918 (1965), we said:
Where the evidence is heard orally by the trial judge, his conclusions therefrom have the effect of a jury’s verdict and his finding should not be disturbed unless plainly erroneous or manifestly wrong. Mize v. Mize, 273 Ala. 369, 141 So.2d 200; Maxwell v. City of Birmingham, 271 Ala. 570, 126 So.2d 209, 211; Board of Zoning Adjustment for the City of Lanett v. Boykin, 265 Ala. 504, 508, 92 So.2d 906.
A careful review of the record does not reveal that the judgment of the circuit court was plainly erroneous. It is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON and EMBRY, JJ., concur.
*836 APPENDIX