This is an appeal from a decree of the Circuit Court of Lawrence County, cancelling a deed conveying the grantor's property to his grandson. We reverse.
On May 11, 1973, Joe Felix Terry conveyed all of his property, approximately 31 acres, including his homestead, to his grandson, Clayborn Terry, and his wife, Sallie Genevieve Terry, for consideration of *Page 161 
$3,000. The deed was recorded on the same day.
On August 24, a complaint was filed in the name of Joe Felix Terry, by Lillian Borden, his daughter, as his next friend, against his grandson and wife, alleging that Terry was incompetent to execute the deed and was unduly influenced by his grandson and others, and received no consideration. Terry sought cancellation of the deed, and damages in the amount of $2,500 for the wrongful detention, wrongful and unlawful use, and occupation, and the wasting of the property. The grandson moved to dismiss the petition but the motion was denied. He then filed an answer to the complaint.
On the motion of the next friend to have Terry's mental condition evaluated, the trial court ordered Terry examined by Dr. Rhyne. Dr. Rhyne's letter concerning the results of his examination was filed March 26, 1974. In that letter Dr. Rhyne stated he was of the opinion Terry was competent to execute a transaction similar to the one in question.[1] The doctor further wrote, "He gave no indication that undue influence had been used in getting him to make the decision [to sell] the way he did." Dr. Rhyne also stated that, although the grantor was not aware of the day of the week, the month of the year, or the year, he remembered selling his land to his grandson and he said the price was fair and that, if he had it to do over again, he would sell it to him again for the same amount.
After receipt of the physician's report, the grandson filed a motion for summary judgment, which was overruled by the court on July 23.
The case came to trial before the court and a jury acting in an advisory capacity. Testimony at the trial showed that Terry was approximately 89 years old at the time he executed the deed, and had been in failing health for about five years. Often he did not recognize his children and did not know the current day, month, or year. He could not see or hear well and was unable to read or write.
At the time of the conveyance, Terry had been living with his daughter, Sybil Terry, the mother of Clayborn Terry. Apparently Terry resided with his daughter Sybil for a while and then with his daughter, Lillian Borden. He was living with his daughter Lillian at the time of the trial.
The evidence further shows that on April 24, 1973, two and a half weeks before the execution of the deed, at the request of his grandson, Terry was examined by Dr. Hollobaugh. He pronounced him "quite mentally competent" to execute a deed. Terry testified that he had not placed his mark on the deed. But his grandson and an abstracter who drafted the deed said he marked it himself. The deed was witnessed by two persons, one of whom notarized it.
An appraiser stated the value of the land conveyed would be as much as $300 an acre or about $9,000 total. The grandson testified his offer of $3,000 was accepted by Terry, in lieu of his wish to make a gift, and the money was placed in a bank account under the name of his granddaughter, at his request, so that he would not lose his pension and social security checks.
In response to interrogatories propounded to the jury by the court, the jury determined that, although the grantor was mentally capable to execute the deed in question, he was subjected to undue influence by the grantee. On April 3, 1975, the court entered a decree cancelling the deed. A motion for a new trial was denied.
The main issue in this case is whether there was undue influence. Terry argues that the conveyance was a product of undue influence on the basis that there was a confidential relationship between the parties to the deed and that the consideration was grossly inadequate. We hold that the facts brought forth at the trial established neither the domination by the grandson necessary for undue influence nor the inadequacy *Page 162 
of the consideration to set aside the transaction; therefore, the deed is valid.
It is well established that what constitutes undue influence to procure a deed depends on the facts and circumstances of each case. Orton v. Gay, 285 Ala. 270, 231 So.2d 305 (1970). However, undue influence can generally be defined as influence which dominates the grantor's will and coerces it to serve the will of another. Wyatt v. Riley, 292 Ala. 277, 293 So.2d 288
(1974).
When the parties stand in a confidential relationship and the evidence tends to show that the beneficiary is the dominant party, the law raises a presumption of undue influence and places on the beneficiary the burden to repel the presumption when the transaction is assailed. Wolfe v. Thompson, 285 Ala. 745, 235 So.2d 878 (1970). Here the parties agree that no presumption of a confidential relationship attends the relationship of a grandfather and grandson.
When no presumption is raised, the burden to prove undue influence is on the one seeking to set aside the deed. Wyatt.
Undue influence warranting cancellation of the deed is difficult to prove. Jones v. Boothe, 270 Ala. 420,119 So.2d 203 (1960). In determining dominance, it is not a question of whether the party knew what he was doing, had done, or proposed to do, but how the intention of the grantor was produced.Wyatt.
In this case Terry claims his intent was produced through his grandson's actions. His grandson does not contend that he did not influence his grandfather at some point in time. In fact, he initiated the discussion of a possible transaction by requesting to buy the property several days prior to the execution of the deed.
It is not influence which is charged, but undue influence. Mere suggestion does not constitute undue influence, nor does solicitation suffice unless the grantor be worn out with importunities so that his will gives way. Halman v. Bullard,261 Ala. 115, 73 So.2d 351 (1954). Here the transaction was discussed only once prior to the execution of the deed, hardly enough to wear away the will of the grantor.
Unquestionably, the parties enjoyed a close relationship, one based on, but not limited to, the grandfather-grandson relationship. Terry lived with his grandson's mother for five years prior to the execution of the deed, and they usually saw each other daily. Terry even had a pet name for his grandson. Relations of friendship between parties to a deed are not sufficient to create a suspicion of undue influence in procuring it. Frederic v. Wilkins, 182 Ala. 343, 62 So. 518
(1913). There existed here only a natural affection between grandfather and grandson. Influence which is the result of sympathy and affection only, is not undue influence to void a conveyance. Fortune v. Boutwell, 271 Ala. 592, 126 So.2d 116
(1961).
Even if Terry can prove his grandson had cultivated this relationship by kindness to win his grandfather's favor, he has not met the burden of proof required to show undue influence. The fact that a grantee by kindness and attention won the affection of a relative who executed a deed to him does not mean that the grantee obtained the deed by undue influence.Stroup v. Austin, 180 Ala. 240, 60 So. 879 (1912). It is even permissible for the grantee to anticipate a substantial reward for his kindness. Stroup.
Furthermore, the fact that Terry offered to give his grandson the land, instead of sell it to him, shows that it was not against his will to pass the land on to his grandson. The fact that his grandson insisted on paying for the land is evidence that he was seeking a legitimate business deal with no indication of exercising undue influence. If anything, he was attempting to overcome any possibility of favoritism by the grandfather to the grandson.
According to the letter written by Dr. Rhyne, the court-appointed physician, and the only truly disinterested person to *Page 163 
present evidence in this case, during the examination after the complaint had been filed, Terry stated that he remembered he sold his land; the price was fair, and, if he had it to do over again, he would sell it to him again for the same amount. Terry had the right to fix the price of his own property. Burke v.Taylor, 94 Ala. 530, 10 So. 129 (1891). Moreover, mere inadequacy of price is not sufficient to set aside a deed of conveyance. Burke.
Terry was under no financial stress necessitating the disposal of his property. His grandson simply offered to buy the land for a certain sum. He did not offer an opinion on the market value of the property. There was no bickering over price. The only question was whether Terry would accept the offer of $3,000 or give the land to his grandson.
That the $3,000 was placed in a bank account in a name other than that of Terry is insufficient to prove grossly inadequate consideration. Terry had constructive possession of the consideration; the money was put there at his request and there was no evidence that it was unavailable to him. There was no attempt by him to withdraw the money.
Terry intended to convey the property at the time he executed the deed. According to Dr. Rhyne's letter, Terry maintained this intent as late as seven months after the complaint was filed. The fact that at the trial, nearly two years after the conveyance, his intent had changed is irrelevant. In family squabbles such as this, when all the parties, including the next friend, have an interest in the deeded land, we must look carefully at the transaction at the time it was made, not at a later time when family disputes may have changed feelings and ideas. In this case, prior to the execution of the deed in question, there had been a dispute between the next friend and Terry as to his proposal to sell the same property to another person. Moreover, prior to the latter part of 1974, he had not even talked with his attorney, although the lawsuit had been pending since August, 1973, and was filed in his name.
Courts, in determining whether a deed was obtained by undue influence, must be extremely careful not to interfere with the right of free disposal which inheres in the ownership of property and not to defeat the uncoerced wishes of its owner.Smith v. Smith, 221 Ala. 56, 127 So. 815 (1930).
Terry's grandson took more than the usual precautions to assure the propriety of the transaction and to protect the deed from attack such as made in this very case. He insisted on paying money for the land. He had the grantor examined by a physician prior to the execution of the deed to assure his mental competency. The signing of the deed was not only witnessed by two people, but was also notarized and promptly recorded. He made no attempt to conceal the fact of the conveyance. What more could he do?
The court must uphold a deed where understandingly and voluntarily made by one of sound mind, although the grantee may be a relative, in the absence of evidence of undue influence in fact, or presumption of such arising from the relation of the parties. Abrams v. Abrams, 225 Ala. 622, 144 So. 828 (1932).
The evidence clearly shows that there was no undue influence exercised on the grantor by the grantee. We hold the deed to be a valid conveyance.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, EMBRY and BEATTY, JJ., concur.
[1] This letter was admitted without objection. When Dr. Rhyne was offered as a witness, the trial judge indicated that if he was going to testify to the same facts as stated in his letter, the judge did not want to hear him. *Page 164