This case concerns a dispute within the Boshell family over approximately 80 acres of farm land that had been owned by the parents. Three of the children sued to have certain deeds concerning this land set aside.
The Boshell family consists of Robert L. Boshell, now deceased ("father"); his wife, Willie Mae Boshell ("mother"); and five *Page 582 
children: R.L. Boshell, Bunk Boshell, Helen Boshell Holcombe, Shirley Boshell Garrigan, and Stella Louise Boshell Lay.
R.L., Bunk, and Helen sued their sister, Stella Louise Boshell Lay, contending that she had "unduly influenced" their parents into the execution of a will and certain deeds and requesting that the deeds be set aside. The original complaint named only Stella Louise as a defendant. However, the complaint was amended to include Stella Louise (as executrix of the deceased's estate), the mother, Floyd Lay (Stella Louise's ex-husband), and Shirley Boshell Garrigan. The plaintiffs alleged that their father and mother had committed a fraud upon them by making various promises to them concerning their inheritance of the family farm. The trial court entered a summary judgment for all defendants, and the plaintiffs appeal.
The plaintiffs allege that, in 1967, their parents promised that at their death the children would each receive a certain parcel of the family farm. Therefore, the plaintiffs contend that the subsequent will and deeds executed by the father, which are contrary to this promise, must have been procured by undue influence.
At Christmas of 1967, the children met with the father and mother and were told that each would receive a designated piece of the homeplace, apparently at their parents' deaths. A sketch of the farm land was drawn, and the children drew their respective lots "out of a hat." It is undisputed that at least two deeds were drawn up. One was made to Helen Boshell Holcombe and the other to R.L. Boshell. The deeds were never delivered to the grantees. Rather, they were given to Stella Louise to keep until further instructions by the father. Although it is not abundantly clear, it appears that all of the children believed that the transfer would occur at the father's death.
However, starting in 1975, the father entered into several transactions, all of which were contrary to any previous discussions concerning the plaintiffs' proposed inheritance of the property. It is not disputed that both the father and the mother were competent in 1975.
From 1975 until sometime in 1986, the father and mother entered into numerous transactions concerning the land in question, and those transactions ultimately vested full ownership of much of the property in Stella Louise. First, they executed two deeds, each conveying a portion of the farm land. The deeds were to their daughter Shirley Boshell Garrigan and to Stella Louise's husband, Floyd Lay.
In 1976, the father and mother executed a deed to Stella Louise for a significant portion of the farm land that had remained after the 1975 transfers to Shirley and Floyd. This deed reserved a life estate in the mother and father; it was duly recorded in 1976.
In 1977, the father made a will leaving everything to the mother, with the provision that if she predeceased him everything would go to Stella Louise. Subsequently, additional deeds were made to Stella Louise, and those deeds were recorded. These deeds removed the parents' life estate in the farm land, resulting in Stella Louise's obtaining full title in the farm land in question.
In 1987, the father died. Subsequently, the plaintiffs discovered that their parents were no longer the record owners of the property in question and that they had deeded the property to Stella Louise. In March 1989, the plaintiffs filed suit, and as noted above, the trial court entered a summary judgment in favor of all of the defendants.
Initially, we note that a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v.First Alabama Bank, 540 So.2d 732, 734 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant. Southern Guar. Ins. Co., supra, at 734. *Page 583 
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
As concerns any allegation of undue influence with respect to the will, we find that the summary judgment was proper. In Alabama a will may be contested in two ways: (1) before probate, a contest may be instituted in the probate court pursuant to Ala. Code 1975, § 43-8-190; or (2) after probate and within six months thereof, a contest may be instituted by filing a complaint in the circuit court of the county in which the will was probated, pursuant to Ala. Code 1975, § 43-8-199.Stevens v. Gary, 565 So.2d 73 (Ala. 1990). In order to contest a will under either of these methods, the contestant must strictly comply with the statutory language in order to quicken jurisdiction of the appropriate court. Bullen v. Brown,535 So.2d 76 (Ala. 1988).
We find that the plaintiffs did not comply with the statute in order to contest the will in the circuit court. They presented no evidence that the will in question had been probated; therefore, it would appear that the circuit court had no jurisdiction to decide a contest. See Bullen.
The plaintiffs' main argument here is that Stella Louise unduly influenced her father and that the conveyances subsequent to 1975 were a product of this influence.
It is well settled that what constitutes undue influence depends on the facts and circumstances of each case.Richardson v. Thomas, 535 So.2d 91 (Ala. 1988). However, undue influence can generally be defined as influence that dominates the grantor's will and destroys the free agency and coerces it to serve the will of another. Richardson.
Mere suspicion that the execution of the deed was obtained through some improper means is not sufficient.Richardson. Further, the advanced age of the grantor, standing alone, is not sufficient to raise a presumption that a grantee exercised undue influence on the grantor. Richardson.
Here, the plaintiffs' basic argument centers on defendant Stella Louise and her alleged undue influence over her father and mother. They make allegations that Stella Louise was the dominant family personality and that she manipulated the mother and father into conveying the land to her. They contend that Stella Louise exercised a great deal of control over her siblings' access to both parents and that she deliberately prevented her brothers and sisters from ready access to their parents, especially during the latter part of the father's life.
Stella Louise contends that there is no evidence of any undue influence and that the father simply changed his mind, and she submitted the following evidence in support of that argument. One of the plaintiffs, Bunk, stated in his deposition that, other than the deeds, the plaintiffs had no evidence that Stella Louise had exerted any undue influence over the parents. Further, the mother's own testimony is contrary to the plaintiffs' allegations. She testified that she remembered the "dividing up" of the land in 1967. She stated that her husband "just took a notion he was going to divide it up, but he was going to hold on to the papers." She added: "I don't know what his idea was unless it was just to see how things turned out. And they [the deeds] were put in a vault. They were never took out." Although it appears that in 1967 title to the land was in the father's name only, the mother testified that she also signed the deeds and that it was their intent to hold the deeds in case they changed their minds.
The mother further testified that her husband (the father) later changed his *Page 584 
mind about the property in question. She stated that the father was sick and was in and out of the hospital and that their children had not been to see him. She testified:
 "They didn't come on the place. So that's when he changed his mind. . . .
 "He said he could do something about that. And so he just sit there a long time and nobody — none of the rest of the family didn't come around except [Stella] Louise. We could always look to her for help."
She further testified that "he [the father] changed his mind and he turned it all over to [Stella] Louise." The mother stated that both she and her husband signed the deeds and that her husband "knew well what he was doing." We note that the plaintiffs did not allege that the mother was not competent.
The evidence presented included an affidavit from the attorney who drew up the deeds in question. He stated that in 1976 he met with the mother and the father in order to prepare a deed conveying a portion of their home place to Stella Louise. This deed reserved a life estate in the parents. He stated that at that time they were both completely in control of all their faculties and were of sound mind.
In 1977, he prepared a will for the father, which left everything to his wife (the mother), with the provision that if she predeceased him everything went to Stella Louise. Again, in 1986, he prepared several deeds for the parents. This time they conveyed more land to Stella Louise and also removed the life estate that had been reserved to them in the 1976 deed.
The attorney noted in his affidavit the following:
 "In preparation of these deeds I had a conversation with Mr. and Mrs. Boshell [the father and mother]. Mr. Boshell was the one who made the decisions. He was clear about what he wanted. He discussed the fact that he had made some other deeds in the past to his other children but had never delivered them to those children. He had not made deeds to all of the children either. In fact, one of his children had had some problems and he was afraid for him to have any land in his name. He asked me if the land was still his to do with as he wanted and I told him that it was. Mr. Boshell was specifically interested in being able to harvest the timber from the land and had me to put a paragraph in the deed specifically addressing this point. He had in fact over the last several years changed his mind several times about how he wanted his land to go. I told him he was free to change his mind as long as he had not delivered the deeds to his children or delivered them to someone else to keep for his children. He said he had not, that they were in a safe place being held for delivery if he decided he wanted them to have the land and if he decided he did not want them to have it, he wanted Stella Louise Lay to have it. . . .
 "There was never any question in my mind that they knew what they were doing. I was of the impression that they intended Mrs. Lay to have the property because of her taking care of them and because they wanted as much assurance as possible that the land would stay in the family. They did not appear to me to be under any duress or undue influence and appeared to be fully aware of the result of their actions."
From a review of the record, it appears that in 1967 the father planned to leave each of his children a parcel of land at the parents' death. However, it is undisputed that no deeds were delivered. Subsequently, according to the undisputed evidence of the mother and the attorney who drew up the deeds and the will, it appears that the father changed his mind and that he, along with his wife, decided to give the property in question to their youngest daughter, Stella Louise, possibly in recognition of her devotion to them, especially to her father during his illness.
The fact that Stella Louise may have won the affection of her parents, who in turn executed certain deeds to her, does not mean that she obtained the deeds by undue influence. Terry v.Terry, 336 So.2d 159 (Ala. 1976). "It is even permissible for the grantee to anticipate a substantial reward for his kindness." Terry, at 162. *Page 585 
Further, we note that courts must be extremely careful not to interfere with the right of free disposal of property and not to defeat the uncoerced wishes of the owner. Terry. For all that appears, the father and mother originally planned to divide the family farm among all their children but, in their later years, simply changed their minds.
In 1967, the only thing the plaintiffs had was an expectation that they would inherit particular parcels of land when the parents died. It is undisputed that they never received deeds to those parcels. In fact, plaintiff R.L. Boshell stated in his deposition that he had no expectation of a deed until his parents died. Furthermore, the plaintiffs failed to present substantial evidence of any fraud on the part of the mother. Rather, all the plaintiffs' evidence centered on the allegations of undue influence by Stella Louise.
In view of the above, we conclude that the trial court properly entered the summary judgment in favor of the defendants.
This judgment in this case is due to be affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and STEAGALL, JJ., concur.