[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 25 
This appeal involves a will contest and numerous ancillary tort claims. Because of the numerous parties involved and the somewhat confusing nature of their relationships, we have greatly condensed our discussion of the factual background of this case.
Virginia Espy Evans ("Virginia") died of cancer on September 24, 1991. She had executed a will on September 12, 1991, and her attorney, John Emory Waddell, submitted the will to the Dale Probate Court for probate on October 1, 1991. On March 31, 1992, Charlie Evans, Jr. ("Charlie"), Virginia's husband's son by another woman; Lori Evans, Charlie's wife; and their three children filed a complaint in the Dale Circuit Court that contested the validity of the will.[1] The complaint also made several tort claims. It was filed against Virginia's estate; Waddell, as executor of the estate; Waddell, individually; Georgia Helen Smith ("Georgia"), Virginia's daughter and Charlie's adoptive mother (who was also Charlie's half-sister); and several fictitiously named defendants. Charlie and his family also filed in the probate court a claim against Virginia's estate.
Thereafter, on October 7, 1993, the complaint was amended to add as plaintiffs James Smith, Georgia's former husband, and Irene Clevenger Glover, Virginia's former employee/companion, and to allege additional claims. It also added as defendants Ann Helms, who was Waddell's secretary and a notary public, and other fictitiously named persons. As amended, the complaint made the following claims:
Counts I, X, and XVII — a will contest by Charlie, James Smith, and Glover against Virginia's estate, Waddell, Georgia, and Helms, alleging that the will was not validly executed;
Counts II, XI, and XVIII — a will contest by Charlie, James Smith, and Glover against Virginia's estate, Waddell, Georgia, and Helms, alleging the use of undue influence;
Counts III, XIII, and XX — a breach of fiduciary duty claim by Charlie, James Smith, and Glover against Virginia's estate, Waddell, Georgia, and Helms;
Count IV — a conversion claim by Charlie against Virginia's estate, Waddell, and Georgia, regarding a property deed;
Count V — a claim by Charlie against Virginia's estate, Waddell, and Georgia, alleging a wrongful ouster and trespass to land; *Page 26 
Count VI — a conversion-of-chattel claim by Charlie against Virginia's estate, Waddell, and Georgia, regarding cattle;
Count VII — an intentional-infliction-of-emotional-distress ("tort of outrage") claim by Charlie and his wife and children against Waddell, Georgia, and several fictitiously named defendants;
Count VIII — a claim by Charlie and his wife and children alleging a tortious interference with a family relationship, against Waddell, Georgia, and several fictitiously named defendants;
Counts IX, XII, and XIX — a "promissory estoppel" claim by Charlie, James Smith, and Glover against Virginia's estate, Waddell, Georgia, and Helms;
Count XIV — a fraud claim by James Smith against Waddell and Georgia;
Count XV — a conspiracy-to-commit-fraud claim by James Smith against Waddell, Georgia, and Helms;
Count XVI — an outrage claim by James Smith against Waddell, Georgia, and Helms.
The defendants did not answer the original complaint, but instead moved to dismiss. The plaintiffs began discovery efforts, but the circuit court temporarily stayed discovery. The defendants petitioned this Court for a writ of mandamus, seeking dismissal of the action; the petition was denied on November 18, 1992. This Court also denied the defendants' motion to reconsider its denial of the writ. The parties, primarily the defendants, filed numerous motions and briefs, so entangling the circuit court in paperwork that while months and years passed, the litigation barely proceeded. On December 6, 1995, the trial court entered a summary judgment in favor of the defendants on all counts. In response, the plaintiffs, on January 3, 1996, filed a "Motion to Reconsider Order Granting Summary Judgment." The circuit court did not rule on that motion within 90 days, and the plaintiffs appealed on May 10, 1996.
 I. Issues
There are several issues raised on appeal: (1) was the appeal timely filed; (2) did the complaint filed on March 31, 1992, sufficiently meet the requirements of Ala. Code 1975, §43-8-199, so as to invoke the jurisdiction of the circuit court regarding the will contest claims; and (3) was the summary judgment proper on all counts?
 II. Timeliness of the Appeal
The defendants argue that the plaintiffs' appeal was not timely and should be dismissed. They point out that the appeal was not filed within 42 days of December 6, 1995, the date of the summary judgment on all counts. It was filed on May 10, 1996, which was 155 days after the date of the judgment. The defendants further argue that the plaintiffs' motion for the trial court to "reconsider" the summary judgment was not a proper Rule 59(e), Ala.R.Civ.P., motion to "alter, amend, or vacate" the judgment. Thus, they contend that the running of the plaintiffs' 42 days for filing a notice of appeal was not tolled by the filing of the motion to reconsider, and that the appeal was, therefore, untimely.
In response, the plaintiffs contend that what they called their motion is not controlling. Citing Jenkins v. LandmarkChevrolet, Inc., 575 So.2d 1157 (Ala.Civ.App. 1991), they argue that although their January 3, 1996, "motion to reconsider" was not styled as a "motion to alter, amend, or vacate the judgment," it nevertheless should be treated as a Rule 59(e) motion. Thus, they argue that that motion suspended the running of the time for filing an appeal — until the 90th day, when it would have been denied by operation of law. See Rule 59.1, Ala.R.Civ.P. The appeal was filed within 42 days of that 90th day.
We agree that the plaintiffs' January 3, 1996, motion was properly to be treated as a Rule 59(e) motion and that its filing tolled the running of the plaintiffs' time for filing a notice of appeal from the summary judgment. The substance of a motion and not its style determines what kind of motion it is.Cannon v. State Farm Mut. Automobile Ins. Co., 590 So.2d 191
(Ala. 1991). While the Alabama Rules of Civil Procedure do not speak of a "motion to reconsider," this Court has repeatedly construed motions so styled, when they have been filed within 30 days *Page 27 
after the entry of a final judgment, to be Rule 59(e) motions.Waters v. J.I. Case Co., 548 So.2d 454 (Ala. 1989); McAlister v.Deatherage, 523 So.2d 387 (Ala. 1988); Papastefan v. B LConstr. Co., 356 So.2d 158 (Ala. 1978). The January 3, 1996, motion filed by the plaintiffs was denied by operation of law after 90 days, see Rule 59.1 and Ex parte Alfa Mut. GeneralIns. Co., 684 So.2d 1281 (Ala. 1996). The plaintiffs appealed within 42 days of that denial. The appeal was timely.
 III. Will Contest under Ala. Code 1975, § 43-8-199
The defendants argued to the circuit court, and now argue to this Court, that the circuit court did not have the statutorily conferred jurisdiction to entertain the plaintiffs' will contest claims because, they say, the plaintiffs' March 31, 1992, complaint failed to allege every pleading requirement of § 43-8-199. Specifically, they contend that the complaint failed to allege that the plaintiffs had an "interest" in Virginia's will and was, thus, insufficient to "quicken" the jurisdiction of the circuit court.
Under § 43-8-199, a will contest in a circuit court must be properly filed within six months following probate of the will. In addition to arguing that the complaint was deficient, the defendants say that the plaintiffs' amendment to the complaint attempting to cure the deficiency was not filed until more than six months after the probate of the will. Thus, the defendants argue that the amendment did not cure the deficient complaint, that the circuit court's jurisdiction under § 43-8-199 was never invoked, that the will contest counts should have been dismissed, and the trial court, therefore, correctly entered the summary judgment on those counts.
In response, the plaintiffs first argue that their complaint contained all the material averments required by § 43-8-199. Alternatively, they argue that if any deficiency existed, it was cured by a later amendment alleging that Charlie was a major beneficiary of a will executed before the will being contested. The plaintiffs argue that the amendment to the complaint was proper under Rule 15, Ala.R.Civ.P., and that it did not cause the defendants to suffer any actual prejudice or serve to delay the action. They summarize their argument on this issue by stating that the complaint "was filed within the [period allowed by the] statute of limitations, with the proper court, stated the requisites of the applicable statute and was properly served on [the adverse] parties."
Section 43-8-199 states:
 "Any person interested in any will who has not contested the same under the provisions of this article, may, at any time within the six months after the admission of such will to probate in this state, contest the validity of the same by filing a complaint in the circuit court in the county in which such will was probated."
Because a circuit court's jurisdiction over a will contest is statutorily conferred and limited, a proceeding initiated under § 43-8-199 must comply exactly with the requirements of that statute. Boshell v. Lay, 596 So.2d 581 (Ala. 1992); Marshall v.Vreeland, 571 So.2d 1037 (Ala. 1990); Simpson v. Jones,460 So.2d 1282 (Ala. 1984); Ex parte Pearson, 241 Ala. 467,3 So.2d 5 (1941). Thus, we must determine if, as the defendants argue, the plaintiffs' complaint failed to allege that the plaintiffs had an "interest" in the will filed for probate on October 1, 1991. In Braasch v. Worthington, 191 Ala. 210, 213,67 So. 1003, 1004 (1915), construing the predecessor of § 43-8-199, this Court explained, regarding the words "any person interested in any will," that "the 'interest' intended is not literally an interest in the will itself, but in itsoperation." (Emphasis original.) The Court further explained: "A contestant of a will must have some direct legal or equitable interest in the decedent's estate, in privity with him, whether as heir, purchaser, or beneficiary under another will, which would be destroyed or injuriously affected by the establishment of the contested will." 191 Ala. at 213-14,67 So. at 1004.
We conclude that the plaintiffs' original complaint, which was filed within the six-month limitations period following the date the will was filed for probate, did not allege that any of the plaintiffs had an "interest" in the will being contested. The original March *Page 28 
31, 1992, complaint identified the familial and business relationships between the parties and set out the plaintiffs' allegations against the defendants, but it did not describe how each, or any, of the plaintiffs had a legal interest in the will, as is clearly required by § 43-8-199. Simpson, supra.
Following the defendants' filing of their motion to dismiss the complaint on that basis, the plaintiffs attempted to cure the deficiency by alleging in a June 9, 1992, amendment that Charlie was a major beneficiary of a will executed by Virginia before the will the plaintiffs now contest. However, we conclude that the amendment failed to cure the deficiency in the original complaint because the amendment was not filed within six months after the will being contested was admitted to probate. In sum, the March 31, 1992, complaint, although timely, was deficient in relation to § 43-8-199. The critical June 9, 1992, amendment attempting to cure the deficiency was untimely. Thus, the plaintiffs never filed a proper will contest complaint within six months of the date the will was admitted to probate, and the relevant statutory limitations period expired. See Bullen v. Brown, 535 So.2d 76 (Ala. 1988).
Accordingly, the jurisdiction of the circuit court was never invoked as to the will contest counts of the plaintiffs' complaint. Thus, the summary judgment was proper as to counts I, II, X, XI, XVII, and XVIII.
 IV. The Counts other than the Will Contest Counts
The plaintiffs' complaint contained several counts that do not specifically contest Virginia's will. The circuit court's jurisdiction over these counts is not at issue, and we address the merits of each, in turn.
 A. Breach of Fiduciary Duty
Counts III, XIII, and XX alleged that Waddell breached his fiduciary duty as executor of Virginia's estate, which the plaintiffs claim is also owed to them, by having several rental properties razed. The plaintiffs alleged that the razing of the structures was contrary to the best interests of the estate. They argue that the summary judgment was improper as to this claim.
We first note that the plaintiffs have not specifically referred this Court to evidence in the record that supports this claim. Further, given that no plaintiff is a beneficiary of Virginia's will filed for probate on October 1, 1991,[2] we conclude that Waddell did not owe the plaintiffs a fiduciary duty in relation to the estate subject to the terms of that will. Accordingly, the summary judgment was proper as to these counts.
 B. Conversion of a Property Deed
Count IV of the plaintiffs' complaint alleged the following: that in July 1984, Virginia issued a deed to Charlie conveying certain real property (a pecan grove of approximately 34 acres); that Charlie accepted the conveyance and kept a copy of the notarized deed in his possession; that the original deed was kept by Virginia, strictly for safekeeping purposes; that Charlie assumed possession of the real property; that after Virginia's death Charlie informed Waddell of the deed and conveyance and delivered to Waddell his copy of the deed; and that Waddell, on behalf of himself, Georgia, and Virginia's estate, wrongfully exercised dominion over the deed and informed Charlie that the deed had been voided and that the property was not Charlie's. Charlie alleged that the defendants' actions constitute wrongful conversion of the deed.
Charlie acknowledges that Virginia never physically delivered the original deed to him and that "delivery" of a deed cannot normally occur after the death of the grantor. However, he argues that the law should recognize that delivery can be made by the executor of the grantor's estate, when the deed is found by the executor in the grantor's safe deposit box. CitingDuncan v. Johnson, 338 So.2d 1243 (Ala. 1976), and other cases, Charlie also argues that the law does not require actual delivery of a deed from a grantor to the grantee, but that "delivery" is to be determined by whether the acts of the parties to the deed manifest an intent by the grantor to divest himself of title to the property. Thus, *Page 29 
he argues that Virginia's act of giving him the copy of the deed and telling him he could have the property[3] constituted a valid delivery of title to him and that the trial court erred in entering the summary judgment as to this claim.
In response, the defendants simply argue that delivery of a deed from a grantor to the grantee is an absolute necessity for a transfer of title to real property, that such delivery cannot occur after the death of the grantor, and that Virginia never delivered the deed to Charlie. They contend that the trial court correctly entered the summary judgment on this claim.
Black's Law Dictionary (6th ed. 1990) defines a "deed" as "[a] conveyance of realty; a writing signed by grantor, whereby title to realty is transferred from one to another." Generally, a deed is ineffective to transfer title if the deed is not delivered from the grantor to the grantee. West v. West,620 So.2d 640 (Ala. 1993); Williams v. Mobil Oil Exploration Producing Southeast, Inc., 457 So.2d 962 (Ala. 1984). Moreover, there is no delivery where a deed was not given to the grantee during the grantor's lifetime, but was given to a third party for safekeeping. Chandler v. Chandler, 409 So.2d 780
(Ala. 1981). However, Alabama law recognizes that the question of whether a deed has been "delivered" is a question of fact, to be ascertained from the surrounding circumstances and the actions of the parties. West, supra; Duncan, supra; and Chandler, supra. Physical delivery of the deed from the grantor to the grantee is not necessary where the facts clearly indicate that the intention of the grantor, by words or acts or both, was to transfer title of the property to the grantee.West, supra; Boohaker v. Brashier, 428 So.2d 627 (Ala. 1983);Chandler, supra; Duncan, supra; and Williams v. Dent,233 Ala. 109, 170 So. 202 (1936).
Having reviewed Charlie's affidavit, along with the affidavits of his wife Lori, Irene Glover, Viola Culver, Miriam Prince, Espy Andrews, and Sam Chandler,[4] we conclude that questions of material fact exist as to whether Virginia "delivered" the July 1984 deed to Charlie by her words and/or acts and that Charlie supported his conversion claim with substantial evidence requiring determination by a jury. The trial court erred in entering the summary judgment as to this count.
 C. Wrongful Ouster and Trespass to Land
Count V of the complaint alleges that on October 1, 1991, and continuing afterwards, by force and intimidation the defendants Waddell, Georgia, and Virginia's estate wrongfully exercised dominion over real property which, the plaintiffs say, was conveyed to Charlie by Virginia. Charlie claims that the defendants are trespassing on real property owned by him, that the defendants have ousted him from the property, and that he is continually suffering damage as the result of his being deprived of the possession of this land, which he says is income-producing land. He supports this claim with the same evidence offered in support of the conversion claim discussed above.
In response, the defendants argue that the summary judgment was proper on the conversion claim. They argue that Charlie has no ownership interest in the real property because, they say, there was no delivery of the deed from Virginia to Charlie.
We have already determined that a question of fact exists as to whether Virginia "delivered" the deed to Charlie in order to transfer title of the land to him. Viewing the same affidavit evidence noted above, we conclude that Charlie supported his ouster and trespass claims with substantial evidence, and that questions of fact remain as to whether the defendants committed, and continue to commit, trespass and a wrongful ouster. The trial court erred in entering the summary judgment as to these claims. *Page 30 
 D. Conversion-of-Chattel Claim
Count VI alleges that Waddell, Georgia, and Virginia's estate wrongfully converted by sale, in defiance of Charlie's vested ownership rights, approximately 150 head of crossbred Angus cattle that Charlie says belong to him. Charlie contends that Virginia gave the cattle to him as payment for services rendered in tending and developing the herd. Charlie supports this claim with his own affidavit, the affidavit of his wife, and that of Irene Glover.
In response, the defendants do not argue that Charlie does not own the cattle, but instead contend that the complaint fails to allege how Charlie obtained an ownership interest in the cattle. They next argue that Charlie's statement that Virginia gave him the cattle shortly before her death would not be admissible because of Alabama's "Dead Man's Statute," Ala. Code 1975, § 12-21-163. Finally, they argue that a transfer of the cattle, as Charlie describes it, violates the requirements for a testamentary disposition of property under Ala. Code 1975, § 43-8-131.
First, we note that § 43-8-131, which requires that a testamentary disposition be in writing signed by the testator and at least two witnesses, does not apply in relation to this claim. Charlie does not contend that Virginia gave him the cattle as a gift or through any will. Rather, he claims that Virginia gave him the cattle in payment for services rendered to her. The payment of compensation for services rendered has no relation to the requirements of § 43-8-131.
Although we conclude that the "Dead Man's Statute," §12-21-163, would prohibit any testimony by Charlie and his wife with regard to any statements made by Virginia about the alleged transfer of cattle to Charlie, the statute does not affect the affidavit of Irene Glover, who is not an interested party as to the conversion claim. Thus, we hold that Charlie supported this claim with substantial evidence and that questions of material fact remain. The trial court erred in entering the summary judgment as to this claim.
 E. Tort of Outrage — The DHR Claim
Count VII alleged that Waddell and/or Georgia induced one or more other unknown persons (fictitiously named defendants John Doe 1 through John Doe 11) to contact the Dale County Department of Human Resources ("DHR") and, the plaintiffs say, to falsely accuse Charlie and Lori of heinous treatment of their three children. The complaint alleged that an investigation by DHR revealed no deficiencies, but that Charlie, Lori, and the children have suffered extreme emotional distress as the result of what they say was intentional wrongful conduct by these defendants. In Alabama, the actionable intentional infliction of emotional distress is termed the "tort of outrage." See American Road Service Co. v.Inmon, 394 So.2d 361 (Ala. 1980).
In response, these defendants simply argue that Ala. Code 1975, § 26-14-9, provides absolute and total civil liability for one who reports child neglect or abuse. That section states:
 "Any person, firm, corporation or official participating in the making of a report or the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
In Brown v. Pound, 585 So.2d 885 (Ala. 1991), this Court held that § 26-14-9 provides absolute immunity from liability for reporting suspected child abuse, except as to claims alleging damage not related to the reporting of suspected child abuse. We conclude that the plaintiffs' claim of intentional infliction of emotional distress relates directly to these defendants' alleged reporting of suspected child abuse. Accordingly, the immunity provided by § 26-14-9 applies. The summary judgment was proper as to this claim.
 F. Tortious Interference with a Family Relationship
Count VIII alleged that Waddell and/or Georgia tortiously interfered with the plaintiffs' intrafamily relationships by inducing one or more other unknown persons (the fictitiously named defendants) to contact the *Page 31 
Dale County DHR and, the plaintiffs say, to falsely accuse Charlie and Lori of heinous treatment of their three children. We conclude that this claim simply restates the allegations of the outrage claim in Count VII. For the same reason discussed above, the summary judgment was proper as to this claim.
 G. Promissory Estoppel
Counts IX, XII, and XIX of the plaintiffs' complaint allege that Virginia made promises to Charlie, James Smith, and Irene Glover that, they say, Waddell, Georgia, Helms, and Virginia's estate caused to be "estopped." They characterize the counts as stating a cause of action they term "promissory estoppel." In essence, the plaintiffs allege that these defendants unduly influenced Virginia so that promises they say were made to them by Virginia were not incorporated into the will she executed on September 12, 1991.
In response, the defendants argue that the doctrine of promissory estoppel is not a cause of action. The defendants also contend that the plaintiffs' claims are barred by the Statute of Frauds (Ala. Code 1975, § 8-9-2(5)), are not admissible because of the "Dead Man's Statute," § 12-21-163; do not meet the § 43-8-131 requirements for a testamentary devise; and are defeated by the § 43-8-199 six-month statute of limitations for contesting a will.
We conclude that these counts are simply an attempt by the plaintiffs to recategorize the undue influence claims the plaintiffs made in their will contest counts. For the reasons noted in section III above, the summary judgment was proper as to these counts.
 H. Fraud in a Divorce Settlement
Count XIV of the complaint alleges that Georgia and Waddell fraudulently misrepresented to James Smith that the September 12, 1991, will was Virginia's true and lawful will. Count XV alleges that Georgia, Waddell, and Helms conspired with John Doe 12 through John Doe 14 to do the same. Smith alleged in both counts that the misrepresentations induced him to agree to a $113,000 divorce settlement with Georgia on October 7, 1991. Smith contends that the September 12 will is invalid and that Virginia's true will is a prior will that is now lost. He argues that in that earlier will he was named as the executor and as a beneficiary, and he contends that because, he says, he was falsely led to believe that the September 12 will was Virginia's true will, he gave up his right to receive any money from Virginia's estate and accepted a settlement in his divorce action with Georgia rather than litigate the divorce. Smith alleged that he suffered emotional distress upon learning that he would not inherit from Virginia's September 12 will and that because of that emotional distress he agreed to certain provisions in the divorce settlement that he otherwise would not have agreed to.
Smith requested several kinds of relief from the circuit court, including the following: an order withdrawing the September 12, 1991, will from probate and declaring that it was not Virginia's last true will; an order declaring that Virginia's prior will was her true last will; an order nullifying certain provisions in the divorce judgment based on the agreement between him and Georgia; and compensatory and punitive damages.
In response, the defendants argue that Smith's fraud counts are an improper attempt to collaterally attack a final judgment of divorce rendered by the Houston Circuit Court. They also argue that the counts constitute an improper will contest, that Smith has no standing to contest the September 12, 1991, will, and that this "will contest" was not filed within the six months allowed by § 43-8-199.
We agree with the defendants that Smith's fraud counts are in actuality a will contest, in that they seek invalidation of Virginia's September 12 will filed for probate on October 1, 1991. The counts were included in the plaintiffs' amended complaint filed on October 7, 1993, and, thus, were not timely filed. Moreover, inasmuch as these fraud counts, filed in the Dale Circuit Court, seek to modify provisions of the divorce judgment entered in the Houston Circuit Court, it is an improper collateral attack on that final judgment. SeeGreenhill v. Bear Creek. Development Authority, 519 So.2d 938
(Ala. 1988); Ex parte Edmondson, 451 So.2d 290 (Ala. *Page 32 
1984). A Rule 60(b), Ala.R.Civ.P., motion filed in the Houston Circuit Court would be the proper means for Smith to attempt to challenge the terms of his divorce judgment. We conclude that the summary judgment was proper as to these counts.
 I. The Tort of Outrage — Divorce Agreement
In count XVI James Smith alleged that Georgia, Waddell, and Helms intentionally caused him to suffer severe emotional distress and that their conduct was so extreme as to be intolerable in a civilized society. In this second count alleging the tort of outrage, Smith alleges conduct different from that alleged in count VII, as to which Charlie, Lori, and their children are the plaintiffs. Smith has alleged the same conduct on the part of Georgia, Waddell, and Helms as was alleged in counts XIV and XV, discussed above, i.e., that these defendants led him to erroneously believe that the September 12 will was Virginia's true will and that he would have no interest in her estate. He alleged that, based on this erroneous belief, he agreed to a divorce settlement that he otherwise would not have agreed to. Smith requested several kinds of relief from the circuit court, including the following: an order withdrawing the September 12, 1991, will from probate and declaring that it was not Virginia's true last will; an order declaring that Virginia's prior will was her true last will; an order nullifying certain provisions in the divorce judgment based on the agreement between him and Georgia; and compensatory and punitive damages.
In response, the defendants make the same arguments they made in relation to counts XIV and XV. They argue that the count is an improper attempt to collaterally attack a final judgment of divorce, that it is an attempt to contest Virginia's will beyond the limitations period allowed by § 43-8-199, and that Smith lacks standing to contest the September 12 will.
We have concluded that the summary judgment was proper on the plaintiffs' will contest claims, and we agree with the defendants' arguments that this count is another improper attempt to contest Virginia's September 12 will. We must conclude also that Smith has not shown that the will is invalid. Accordingly, Smith has not presented substantial evidence of any conduct on the part of Georgia and Waddell that is wrongful, let alone conduct rising to the level needed to support a claim of outrage. See Anderton v. Gentry,577 So.2d 1261 (Ala. 1991); American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980). The summary judgment was proper as to this count.
 V. Conclusion
We affirm the summary judgment as to all counts of the plaintiffs' complaint except counts IV (conversion of a property deed), V (ouster and trespass to land), and VI (conversion of chattel). We reverse as to those three counts and remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
[1] The plaintiffs alleged that the will submitted for probate on October 1, 1991, was invalid and, thus, not Virginia's true last will and testament. They alleged that Virginia's true last will was a prior will that had been lost. They sought to prove the content of the lost will by the testimony of James Francis, who allegedly had read it and could recall its content.
[2] Because, as explained above, the circuit court's jurisdiction was never invoked as to the plaintiffs' will contest claims, the plaintiffs' argument that they are beneficiaries of Virginia's estate under a previous "lost" will is not properly before this Court.
[3] The deed contained a covenant, purporting to run with the land, providing that any attempted conveyance of the property by Charlie would cause the property to revert to the grantee or her heirs.
[4] Taken as a whole, the affidavits represent substantial evidence that Virginia and Charlie had a loving relationship, that Virginia treated him as if he were her son, that she wished him to have a life estate in this real estate, which she called "the farm," and that she believed she had given him such an interest.